**UNITED STATES of America**

v.

**ONE PARCEL PROPERTY LOCATED AT 427 AND 429 HALL STREET, MONTGOMERY, MONTGOMERY COUNTY, ALABAMA, a/k/a G & G Grocery, with all Appurtenances and Improvements Thereon.**

**Civ. A. No. 91–A–1302–N.**

United States District Court,
M.D. Alabama,
Northern Division.

May 19, 1994.

John T. Harmon, Charles Redding Pitt, U.S. Attorney's Office, Montgomery, AL, for U.S.

Jeffery C. Duffey, Charles M. Law, Montgomery, AL, for George Thomas Jenkins.

Scott J. Humphrey, Stewart, Davis & Humphrey, P.C., Birmingham, AL, for Fleet Finance, Inc.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is now before the court on the motion for a new trial, or in the alternative, motion to alter the judgment, filed by Claimant, George T. Jenkins ("Jenkins"), on February 4, 1994. Fed.R.Civ.P. 59(a) & (e). A hearing was held and oral arguments were heard on March 17, 1994.

Jenkins contends that the court erred in its analysis of his Eighth Amendment Excessive Fines Clause [1] defense in its findings and order of forfeiture entered on January 21, 1994, following a bench trial. *United States v. One Parcel of Property Located At 427 & 429 Hall St.*, 842 F.Supp. 1421 (M.D.Ala.1994) (Albritton, J.) ("*427 & 429 Hall St.*").

For the reasons stated below, the court finds that Jenkins' motion for a new trial or in the alternative to amend the judgment is due to be denied.

### II. BACKGROUND

#### A. Procedural History

On October 29, 1991, the United States of America ("the Government") filed this civil action *in rem* for forfeiture of Jenkins' real property, which includes a single building housing a grocery store and a beauty parlor, located at 427 and 429 Hall Street, Montgomery, Alabama. It sought forfeiture pursuant to the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881(a)(7).[2] The Government con-

---

1. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Constitution, Amendment 8.

2. 21 U.S.C. § 881(a)(7) provides for the forfeiture of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a violation of the

narcotics laws punishable by more than one year's imprisonment. *United States v. 38 Whalers Cove Drive*, 954 F.2d 29, 33 (2d Cir.), *cert. denied sub nom., Levin v. United States*, — U.S. ——, ——, 113 S.Ct. 55, 61, 121 L.Ed.2d 24 (1992) ("*38 Whaler's Cove Drive*"). In order to succeed under § 881(a)(7), the government need not establish a predicate conviction, but only "probable cause" to believe that a crime punish-

tended that the property was used or intended to be used to commit or to facilitate the commission of violations of federal drug laws. *See* 21 U.S.C. § 801 *et seq.* It invoked the court's jurisdiction under 28 U.S.C. §§ 1345 & 1355.

A non-jury trial was held on November 24, 1993.[3] On January 21, 1994, the court issued a Memorandum Opinion and attached Order in which it made findings of fact and conclusions of law. *427 & 429 Hall St.*, 842 F.Supp. at 1421.[4]

In sum, the court held that probable cause existed to believe that Jenkins sold drugs on the defendant property; he was not an "innocent owner"; and forfeiture would not violate the Eighth Amendment's Excessive Fines Clause. *427 & 429 Hall St.*, 842 F.Supp. at 1421. Accordingly, the court ordered the property forfeited to the Government. Specifically, with respect to Jenkins' Excessive Fines Clause defense, the court concluded that the appropriate standard for determining whether a forfeiture under § 881(a)(7) is excessive is the "instrumentality test" articulated by Justice Scalia in his concurrence in *Austin v. United States*, —— U.S. ——, ——, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J. concurring in part and concurring in judgment). *427 & 429 Hall St.*, 842 F.Supp. at 1429–30. The court also noted

that, under the facts of the case, forfeiture was not disproportionate. *Id.* at 1430 n. 19.

Subsequently, Jenkins filed the instant motion. Prior to oral arguments on the motion, the Eleventh Circuit issued an opinion in *United States v. One Single Family Residence Located At 18755 N. Bay Rd.*, 13 F.3d 1493 (11th Cir.1994) ("*18755 N. Bay Rd.*"). In that case, the court per Senior Judge Dyer determined that the forfeiture, pursuant to 18 U.S.C. § 1955, of a home valued at $150,000.00 was, under the particular facts of the case, a "disproportionate" penalty. 13 F.3d at 1498.

The court is satisfied that its previous findings are consistent with the Eleventh Circuit's decision in *18755 N. Bay Rd.*. Nevertheless, because *18755 N. Bay Rd.* suggests that some proportionality inquiry is appropriate within Eighth Amendment Excessive Fines Clause analysis, but does not provide a standard of review, the court is compelled to articulate a test.

### B. Facts

In August 1991, Agent McKitt, then-assigned to the District Attorney's Montgomery Operation Drugs Task Force ("MOD"), received a telephone call from a confidential informant ("CI"), who notified him that illegal narcotics were being sold at the G & G Grocery store on Hall Street ("G & G").[5] On

---

able by a year or more has occurred. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1440 (11th Cir.1991) (en banc). To demonstrate "probable cause" for forfeiture purposes, the Government must present evidence furnishing a reasonable ground for belief that a substantial connection exists between the property to be forfeited and the illegal activity. *See United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1505 (11th Cir. 1993) (citations and quotation marks omitted); *United States v. Approximately 50 Acres of Real Property etc.*, 920 F.2d 900, 902 (11th Cir.1991) (per curiam). *See also 427 & 429 Hall St.*, 842 F.Supp. at 1426 n. 10 (discussing split among the Circuits on what the Government must establish in order to prove probable cause). A reasonable ground for belief is less than prima facie proof but more than mere suspicion. *$121,100.00 in U.S. Currency*, 999 F.2d at 1505 (citations omitted); *United States v. One Single Family Residence Located at 15603 85th Ave. N.*, 933 F.2d 976, 979 (11th Cir.1991).

**3.** At the trial, the court heard the testimony of Jenkins, Stephen McKitt ("Agent McKitt"), of the

Montgomery County Sheriff's Department ("MCSD"), Blake Trammer ("Agent Trammer"), an investigator in the Montgomery District Attorney's Office, Norman Jean Pettus ("Agent Pettus"), of the MCSD, Jamie D. King ("Agent King"), of the MCSD and Arnold Mitchell ("Mitchell"), of the Alabama Department of Forensic Sciences.

**4.** Jenkins contended that forfeiture was inappropriate because (1) the police did not have probable cause for a search warrant, (2) he was an "innocent owner," and (3) it would violate the Eighth Amendment's Excessive Fines Clause.

**5.** The legal description of the defendant real property forfeited is as follows:

Lot D, according to the Plat of a Subdivision of the property of Fred Cramton, Jr., being Lots R–13, R–14, R–15A on the East side of Hall Street and the North side of Yougene Street, as the same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 13, at Page 150, less and except therefrom that certain part of Lot D

August 20, 1991, Agent McKitt met the CI at MOD headquarters, thoroughly searched him to confirm that he did not have any narcotics or money already on his person, and briefed him on the operation MOD intended to conduct. Agents McKitt and Trammer and the CI then proceeded to the corner of Hall Street from where the front of G & G was visible. The agents gave the CI $25 in marked bills to carry out a controlled buy of narcotics. They observed the CI enter G & G and return after five minutes without coming into physical contact with anyone after leaving the store.

Once back in the agents' automobile, the CI produced a one-inch by one-inch square "zip-loc" clear bag containing a white powder-like substance. The CI described Jenkins as the person who had sold him the bag. He stated that Jenkins had the bag in his pants pocket. Subsequently, the agents field tested the substance, identified it as five-tenths of a gram of cocaine, and destroyed it.

On or about August 29, 1991, Agent McKitt and the CI returned to the corner of Hall Street and conducted a second controlled buy with exactly the same preparation and in precisely the same manner as the first. Once again, the CI returned with a "zip-loc" clear bag containing a white powder-like substance. The CI again identified Jenkins as the person who sold him the substance and stated that he produced the bag from his pants pocket. The substance was field tested, identified as five-tenths of a gram of cocaine, and destroyed.

Based on the information acquired from the two controlled buys, Agent McKitt obtained a search warrant from the Montgomery Municipal Court, which authorized the search of G & G and any vehicles on the premises. See Pl. Tr. Exs. # 5 & # 6.

At 4:00 p.m., on August 30, 1991, Agents McKitt, Trammer and King of MOD and Agents Pettus and Bert Bodiford of the MCSD executed the search warrant. First, Agent McKitt entered G & G, identified Jenkins, confirmed that he was in fact George T. Jenkins, the owner of G & G, and showed him the search warrant. The other agents then entered and secured the premises. This process included informing Jenkins of his *Miranda* rights, and searching his person, the entire store, and his Chevrolet Blazer, which was parked in front of the store.

The agents discovered seven one-inch by one-inch "zip-loc" clear bags containing a white powder-like substance and $45 in Jenkins' pockets; $800 in his wallet; $108 and .38 caliber bullets on a shelf behind the counter; and three hand-rolled cigarettes and a .38 caliber pistol in Jenkins' Chevrolet Blazer. The cigarettes were in a coat pocket. See Pl. Tr. Ex. # 7. Including the money from the cash register, the agents discovered a total of $1,764 during the search. The seven bags were identical to the two bags of cocaine the CI purchased.[6]

The agents arrested Jenkins for the unlawful possession of controlled substances. Subsequently, Mitchell's tests identified the bags taken from Jenkins' pockets as containing a total of three grams of cocaine and the cigarettes found in Jenkins' Blazer as containing six-tenths of a gram of marijuana. See Pl. Tr. Ex. # 13.[7] On September 14, 1992, Jenkins pled guilty in state court, based on the August 30, 1991, incident, to the unlawful possession of cocaine, a Class C felony under state law with a minimum sentence of 1 year and a day and forfeited the $1,764 to the State of Alabama. He was placed on probation. See Pl. Tr. Ex. # 15 at 2–7. The charge of unlawful possession of marijuana was dropped as part of a plea agreement. *Id.* at 2.

At trial, Jenkins denied ever selling illegal drugs. With respect to the seven "zip-loc" clear bags, he testified that he found them

conveyed by Fred J. Cramton and wife, Gladys A. Cramton, to The Housing Authority of the City of Montgomery, Alabama, by Deed dated September 8, 1956, filed for record September 10, 1956, and recorded in Deed Book 423, at Page 148, in the Probate Office aforesaid. Plaintiff's Trial Exhibit ("Pl.Tr. Ex.") # 14 at 1. It is valued at approximately $60–65,000.

6. Agent McKitt testified that the bags were identical to those used by drug dealers.

7. At trial, Jenkins stipulated that Mitchell is an expert on drugs analysis.

wrapped in tissue on the steps of his store while he was preparing to open for business at 7:30 a.m. on August 30, 1991. He stated that he put the tissue in his pocket, but was not certain that it contained drugs.[8] He further testified that he has often had to run-off people who try to conduct drug sales in front of his store and that it is not uncommon for them to drop narcotics on G & G's steps. He testified that he had called the police on prior occasions when that happened, but he had not called the police on this occasion before law enforcement officers entered his store at around 4:00 p.m.

With regards to the pistol in his vehicle, he stated that he had a license for it and that he used it to protect the store. He also testified that the marijuana cigarettes belonged to a friend, who left them with him over a year ago. Finally, he emphasized that he pled guilty only to possession of cocaine and not to selling it.

In response to Jenkins' Eighth Amendment Excessive Fines Clause argument, Agent McKitt testified that G & G is only one-tenth of a mile away from the basketball courts of a junior high school. This fact was undisputed.

## III. DISCUSSION

### A. Austin v. United States

In *Austin*, the owner of real property occupied by his mobile home and auto body shop sold two ounces of cocaine on the premises. A search of the premises revealed small amounts of marijuana and cocaine, drug paraphernalia, a gun and $4,700 in cash. The owner pled guilty to state criminal charges. Subsequently, the United States instituted civil *in rem* forfeiture proceedings against the real property. The owner defended upon the ground that the forfeiture of his property was so grossly disproportionate to the offense as to violate the Eighth Amendment Excessive Fines Clause.

The Supreme Court per Justice Blackmun held that an *in rem* civil forfeiture proceeding under 21 U.S.C. §§ 881(a)(4) & (a)(7) is subject to the limitations of the Eighth Amendment Excessive Fines Clause, because such a forfeiture constitutes a punishment. *Austin*, —— U.S. at ——, 113 S.Ct. at 2812.[9] Justice Blackmun rejected the Government's argument that the Eight Amendment applies only in criminal proceedings. *Id.* at ——, 113 S.Ct. at 2804–05 (Although "[s]ome provisions of the Bill of Rights are expressly limited to criminal cases.... The text of the Eighth Amendment includes no similar limitation.").[10] After considering the historical significance of forfeiture and Supreme Court precedent, he turned to the text of § 881 and found that nothing in the language of the statute "contradict[s] the historical understanding of forfeiture as punishment." *Id.* at ——, 113 S.Ct. at 2810.[11] Justice Blackmun,

---

**8.** On cross-examination Jenkins testified that he did know that the bags contained cocaine. Moreover, during his guilty plea in State court, he also stated that he knew that bags in his pockets contained cocaine. *See* Pl.Tr. Ex. # 15 at 7.

**9.** Section 881 forfeitures are descendants of the deodand. "At common law the value of an inanimate object directly or indirectly causing the accidental death of a King's subject was forfeited to the Crown as a deodand. The origins of deodand are traceable to Biblical and pre-Judeo-Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required." *Austin*, —— U.S. at ——, 113 S.Ct. at 2806 (quoting O. Holmes, *The Common Law* c. 1 (1881)).

**10.** Moreover, he recognized that although the Framers considered the Eighth Amendment immediately after the Fifth, an amendment whose self-incrimination provision is expressly limited to criminal proceedings, there were no proposals to limit the Eighth Amendment in a similar manner. *Id.* at ——, 113 S.Ct. at 2805 (*citing Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 294, 109 S.Ct. 2909, 2930, 106 L.Ed.2d 219 (1989)) (O'Connor, J. concurring in part and dissenting in part). Rather, the Framers intended that the Eight Amendment more generally "limit the government's power to punish." *Id.* Justice Blackmun concluded that because punishment "cuts across the division between the civil and criminal law," the relevant question was not whether forfeiture under § 881 was civil or criminal, but whether it was punishment. *See id.* —— U.S. at —— – ——, 113 S.Ct. at 2805–06 (quoting *United States v. Halper*, 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989)).

**11.** Reviewing the congressional records, Justice Blackmun noted that Congress recognized that "the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs" and intended forfeiture to supplement these schemes. *Id.* at ——, 113 S.Ct. at 2811

however, declined to articulate a test to determine when such a forfeiture is excessive and thereby unconstitutional. *Id.* (*citing Yee v. City of Escondido,* —— U.S. ——, ——, 112 S.Ct. 1522, 1534, 118 L.Ed.2d 153 (1992)) ("[p]rudence dictates that we allow the lower courts to consider that question in the first instance.").[12]

Justice Scalia, however, in his concurrence opined that the "relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Austin,* —— U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring in part and concurring in judgment). He proposed an "instrumentality" test which analyzes the nexus between the property seized and the crime committed. *See id.* ("[t]he question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.") (emphasis original).[13]

In response, the *Austin* majority noted that "[w]e do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision

today in no way limits the Court[s] of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." —— U.S. at —— n. 15, 113 S.Ct. at 2812 n. 15.

## B. United States v. One Single Family Residence At 18755 N. Bay Rd.

In *18755 N. Bay Rd.,* the United States instituted an *in rem* forfeiture action under 18 U.S.C. § 1955, against the single-family residence, which was the home of Emilo and Yolanda Delio ("Mr. and Mrs. Delio"). The forfeiture action resulted from the Government's investigation of a poker game conducted by Mr. Delio.[14] Subsequently, a United States Magistrate Judge granted the Government's motion for summary judgment and the district court ordered the property forfeited.

On appeal, the Eleventh Circuit concluded that "... through the lens of *Austin,* and accepting the fact that [Mr.] Delio used his home for a gambling operation in violation of ... § 1955, ... the forfeiture of his home, of an arguable value of $150,000, is an imposition of a disproportionate penalty." *18755 N. Bay Rd.,* 13 F.3d at 1498.[15] The court, however, did not articulate a test for

---

(*citing* S.Rep. No. 225, 98th Cong., 2nd Sess. 191 (1983), U.S.Code Cong., & Admin.News 1984, 3182). It reinforced this punitive intent by the inclusion of an "innocent owner" defense in § 881. Congress singled out only those actually involved in drug trafficking for sanction, and thereby "focus[ed] the provisions on the culpability of the owner in a way that makes them look more like punishment." *Id.* at ——, 113 S.Ct. at 2811.

For a general discussion of Excessive Fines Clause jurisprudence see David J. Stone, Note, *The Opportunity of Austin v. United States: Toward A Functional Approach To Civil Forfeiture And The Eighth Amendment,* 73 B.U.L.Rev. 427 (1993).

**12.** Similarly, in *Alexander v. United States,* —— U.S. ——, ——, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441 (1993), Chief Justice Rehnquist writing for the Court, also declined to articulate a test and remanded the case to the Eighth Circuit for it to first consider the issue. Unlike *Austin, Alexander* involved an *in personam* criminal forfeiture not an *in rem* civil forfeiture, so there was no threshold question concerning the applicability of the Eighth Amendment. *Alexander,* —— U.S. at —— n. 4, 113 S.Ct. at 2776 n. 4.

**13.** At trial, this court found Justice Scalia's test to be well reasoned and applied it to the case at

bar. *427 & 429 Hall Street,* 842 F.Supp. at 1429. Moreover, it concluded that because the *Austin* Court did not articulate a test and because the Eleventh Circuit has not addressed the *Austin* decision, that it need not apply any proportionality analysis. *Id.* at 1429–30 n. 17. (*citing Real Property and Residence at 3097 S.W. 111th Ave.,* 921 F.2d 1551, 1556–57 (11th Cir.1991) (Eighth Amendment proportionality analysis does not apply to civil forfeiture cases). *But see id.* at 1430 n. 19 (forfeiture in the instant case not disproportionate).

**14.** Mr. Delio, an 80–year old invalid, along with three co-defendants were convicted of conducting an illegal gambling operation. *See United States v. Metzger,* 993 F.2d 1554 (11th Cir.1993) (per curiam).

**15.** The court relied heavily on the legislative history of § 1955. It noted that a House Report accompanying the Act stated that: " '[T]he provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern....' " *Id.* at 1498–99 (*quoting* H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 53 (1970) *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029).

determining when a forfeiture is excessive and therefore unconstitutional.

## C. The Appropriate Standard of Review

### 1. Other Jurisdictions

The *Austin* Court's decision not to provide a standard of review has caused disagreement among the lower federal courts over the appropriate test for analyzing an Eighth Amendment Excessive Fines Clause defense. This debate has occurred primarily among the district courts.[16] Some courts have applied or indicated support for a "proportion-ality" analysis without articulating a test[17]; others have adopted Justice Scalia's "instrumentality test."[18]; and others have applied multifactor tests.[19] As previously discussed, this court believes that the Eleventh Circuit's decision in *18755 N. Bay Rd.* suggests that it now considers some proportionality analysis to be necessary in determining when forfeiture is excessive and therefore unconstitutional. *Contra 3097 S.W. 111th Ave.*, 921 F.2d at 1556–57. To date, only two published opinions have applied a test that combines "proportionality" and "instrumentality" analysis.

**16.** To date, no federal Court of Appeals has accepted Chief Justice Rehnquist's and Justice Blackmun's invitations to fashion a detailed test.

In *United States v. Premises Known As RR # 1*, 14 F.3d 864, 873 (3d Cir.1994), the Third Circuit remanded the case for the district court to create a test.

In *United States v. Oakes*, 11 F.3d 897, 900 n. 2 (9th Cir.1993), the Ninth Circuit declined to address *Austin* because it was raised for the first time at oral arguments.

The Fourth Circuit, however, appears to have determined that a proportionality test is appropriate. In *United States v. Borromeo*, 1 F.3d 219, 221 (4th Cir.1993), it remanded a case to the district court for consideration of the proportionality of the forfeiture in question. 1 F.3d at 221. The court stated that "[i]n the wake of *Austin*, an inquiry into the proportionality between the value of the [property] sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order." *Id. See United States v. Stewart*, No. 93–1642, 1994 WL 89803 at * 3 (4th Cir. March 22, 1994) (per curiam) (unpublished) (*citing Borromeo*, 1 F.3d at 221) (forfeiture of proceeds of drug trafficking necessarily proportionate).

Furthermore, in *United States v. Bieri*, 21 F.3d 819, 824–25 (8th Cir.1994), (subject to revision or withdrawal), the Eighth Circuit concluded that *Austin* requires courts to consider the proportionality of a forfeiture. The *Bieri* court characterized this proportionality analysis as "a fact-specific evaluation of all the circumstances of the illegal activity including the extent of the defendants' criminal drug activities and the amount of time that they conducted those activities ..." *Id.* (citation omitted). *See also United States v. Myers*, 21 F.3d 826, 829–31 (8th Cir.1994) (citation omitted) (subject to revision or withdrawal) ("[W]e believe that a successful proportionality challenge to ... forfeiture will be a rare occasion.")

**17.** *United States v. $288,930.00 In U.S. Currency*, 838 F.Supp. 367, 371 (N.D.Ill.1993); *United States v. Proceeds From the Sale of Approximately 15,538 Panulirus Argus Lobster Tails*, 834 F.Supp. 385, 391 n. 10 (S.D.Fla.1993); *United States v. Real Property: 835 Seventh St.*, 832 F.Supp. 43, 48 (N.D.N.Y.1993).

**18.** *427 & 429 Hall St.*, 842 F.Supp. at 1429–30; *United States v. One Parcel Property Located At 9638 Chicago Heights*, 831 F.Supp. 736, 737 (E.D.Mo.1993); *United States v. 2828 N. 54th St.*, 829 F.Supp. 1071, 1073 (E.D.Wis.1993); *United States v. Real Property Titled in The Name Of Bryan F. Lentz*, No. 92–298 ACK (D.Haw.1993); *United States v. Real Property Known As 84–049 Lawaia St.*, No. 90–767 DAE (D.Haw.1993).

Furthermore, in *In re King Properties*, 635 A.2d 128, 131–32 (Pa.1993), the Pennsylvania Supreme Court, relying on Justice Scalia's *Austin* concurrence, held that a forfeiture is not excessive if the State establishes a "significant relationship" between the property and illegal activity by proving a pattern of criminal incidents on the property. *Id. See SAS, Inc. v. Commonwealth of Pa.*, 638 A.2d 455, 460 (Pa.1994) (applying *In re King Properties* ).

**19.** *United States v. One Parcel of Property Located At Shelly's Riverside Heights Lot X*, 851 F.Supp. 633 (M.D.Pa.1994) ("*Shelly's Riverside Heights* ").

In *Shelly's Riverside Heights*, Judge Caldwell *sua sponte* granted summary judgment in favor of the defendant property. *Id.* at 639. The property which included a log cabin had been purchased by claimants for $7,950. *Id.* In a related criminal case, claimants had pled guilty to manufacturing 23 kilograms of marijuana on the property. *Id.* at 634. Judge Caldwell weighed "the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach as well as the personal benefit reaped by the defendant, the defendant's motive and culpability and of course, the extent that the defendant's interest and the enterprise itself are tainted by criminal conduct" and determined that the forfeiture was unconstitutionally excessive. *Id.* at 637 (citation and internal quotation marks omitted). His analysis was devoid of any reference to the nexus between the property and the crime.

In *United States v. Real Property Located At 6625 Zumirez Drive*, 845 F.Supp. 725 (C.D.Cal.1994) (*"6625 Zumirez Drive"*), Judge Pfaelzer proposed a multifactor test for analyzing the Eighth Amendment's Excessive Fines Clause. He opined that "in determining whether a forfeiture violates the Excessive Fines Clause, three factors should be weighed, with no one factor being dispositive: (i) the inherent gravity of the offense compared with the harshness of the penalty [20]; (ii) whether the property was an integral part of the commission of the crime [21]; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use." *Id.* at 731 (footnote omitted).

In *6625 Zumirez Drive*, the Government instituted a forfeiture action under both 21 U.S.C. §§ 881(a)(7) and 981(a)(1)(C) [Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") ], against claimant Gene Craig Wall's ("Wall") real property, which included his home. *Id.* at 730. On July 30, 1991, pursuant to a search warrant, police officers located and removed 152 grams of cocaine, 4.7 grams of psilocybin, and one marijuana plant approximately three and a half feet tall from the defendant property. The street value of the cocaine on the date of the seizure was $15,200.

At the time of the search, Wall and his son William Craig Wall ("William") were arrested and charged with possessing cocaine for sale, a violation of Cal. Health & Safety Code § 11351. Subsequently, Wall was acquitted and William was convicted.

On September 23, 1991, the Government filed its complaint for forfeiture of the defendant property pursuant to § 881(a)(7) on the ground that it was used to facilitate the distribution of narcotics in violation of 21 U.S.C. §§ 887(a)(7) & 846. Since Wall was acquitted of involvement in the possession for sale of the narcotics, the Government's theory in seeking forfeiture was that he permitted his son to use the defendant property to distribute narcotics.

After applying a multifactor test, Judge Pfaelzer held that even though Wall was not a "totally 'innocent owner' " and did permit illegal conduct on his property, the forfeiture of the defendant property "involving $625,000 in equity would be violative of the Excessive Fines Clause." *Id.* at 738. *But see id.* at 730 n. 2 (revised appraisal showed that Wall only had $300,000 equity in property).

A review of Judge Pfaelzer's application of his "multifactor test" reveals what this court considers to be its shortcomings. It is an extremely subjective test and thereby easily manipulated to produce desired results. *See id.* at 734–38. Is "disproportion" 51% in a particular judge's view of a balance? Where is the line? This approach makes paramount the personal, subjective feelings of the individual judge as to simply "what seems right" on a case by case basis, rather than giving objective guidance to courts in an effort to achieve consistent application of the law. Moreover, the application of the test produces a significant increase in the burden placed upon the Government within forfei-

---

**20.** Judge Pfaezler explained that the first factor focuses on the culpability of the claimant. *Id.* at 732–33 n. 4.

Under the first factor, the court must determine into which of three categories a claimant's conduct falls. Either (1) the claimant has been convicted of the criminal act or acts underlying the forfeiture; (2) the claimant has never been charged with any crime; or (3) the claimant has been charged and acquitted of the act or acts underlying the forfeiture. *Id.* at 732. "Whenever the claimant's conduct falls outside the first category, the court must be careful to focus only on the inherent gravity of the offensive conduct engaged in by the claimant himself, rather than the inherent gravity of the offense or offenses that the government had probable cause to believe were committed on the property." *Id.* (footnote omitted). Moreover, Judge Pfaelzer

suggests that in evaluating the harshness of the penalty imposed, a court must not only consider the monetary value of the property forfeited, but also the intangible value of the particular type of property involved. *Id.* In particular, he emphasizes the high value placed upon homes within our society. *Id.* (citations omitted).

**21.** Judge Pfaezler explained that the second factor focuses on the relationship between the defendant property and the alleged offense. *Id.* at 732–33 n. 4.

In elaborating on the second prong, Judge Pfaelzer merely concedes that it is based on the traditional notion that *in rem* forfeitures are based on the legal fiction that " 'the thing is primarily the offender.' " *Id.* (citations omitted).

ture cases and thereby changes the substance of forfeiture law as enacted by Congress. *See id.* at 737–38. *Austin* does not justify such a result.

Accordingly, the court declines to apply Judge Pfaelzer's test. *See Austin,* —— U.S. at ——, 113 S.Ct. at 2812 (declining to apply multifactor test).[22]

In the second reported case applying a test combining proportionality and instrumentality, *United States v. Real Property Known And Numbered As 429 S. Main St.,* 843 F.Supp. 337, 341–42 (S.D.Ohio 1993) (citations omitted), Judge Graham applied a more objective analysis. He reviewed the relationship between the property and the crime and compared the value of the property to the "nature of the offense and the legitimate remedial purposes of the forfeiture." *Id.* Applying this analysis, Judge Graham determined that the forfeiture of the defendant real property, valued at $83,700, was not disproportionate because the claimant sold marijuana on three occasions at the property and could have been sentenced up to ten years and fined up to $500,000 on each count of a three count indictment. *Id.* at 342.

## 2. The Test

■■ This court finds that in determining whether a forfeiture under 21 U.S.C.

§§ 881(a)(4) & (a)(7) violates the Excessive Fines Clause a two step balancing test which emphasizes "instrumentality" analysis but includes "proportionality" analysis, is appropriate. *See United States v. All Assets And Equipment of West Side Bldg. Corp.,* 843 F.Supp. 377, 380–81 (N.D.Ill.1993); *Accord 18755 N. Bay Rd.,* 13 F.3d at 1498.[23] The test hereby established is as follows:

(1) Was there a "substantial connection" between the defendant property and the drug trafficking in question? If so,

(2) Is the forfeiture of the defendant property a "grossly disproportionate" punishment, given the nature of the drug trafficking involved?

■■ Under the first step, the focus is on the relationship between the property and the offense, i.e. "[w]as it close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *See Austin,* —— U.S. at ——, 113 S.Ct. at 2815 (Scalia, J. concurring in part and concurring in judgment). Initially, the Government has the burden of establishing a "substantial connection" between the defendant property and drug trafficking. To satisfy this burden, the Government must establish a pattern of illegal activities occurring at the defendant real property. *See Austin,* —— U.S. at ——, 113

---

22. Jenkins also argues that this court should adopt a multifactor test. He maintains that the court should consider the following factors:

(1) Whether the property constitutes the claimant's livelihood.

(2) The degree to which the claimant's property has been involved in drug activity, and whether the property has been purchased or obtained through the proceeds of drug activity.

(3) Whether the claimant has been convicted of a crime related to the forfeiture, the severity of the crime, and the severity of the sentence imposed.

(4) The extent of claimant's criminal behavior and the need for deterrence.

(5) The extent to which the government necessarily expended its funds to interdict drug activity involving the property.

(6) The value of the property seized as compared to the value of the drugs involved in the crime and the value of the property relative to the financial condition of the claimant.

Jenkins' test resembles that proposed by the Petitioner in *Austin. See* Brief for Petitioner at 46–48, *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (No. 92–

6073). The court, however, finds that such a test is inherently subjective and will not adopt it.

23. At least one commentator has voiced support for such a test:

The dangers of judicial subjectivity, which provide the foundation for Justice Scalia's impulse to restrict judicial discretion, lend substantial support to the imposition of an instrumentality test. Such a test, although not eliminating variability altogether, would reduce judicial subjectivity by constraining the reliance on judicial determinations of the magnitude of an offense—determinations necessary in a proportionality analysis. Justice Scalia's proposed test should not stand alone, however, to give full meaning to the notion of excessiveness, punishment be graduated and proportioned to the offense. *A test that combines a threshold instrumentality test with a secondary proportionality test would strike an appropriate balance between curbing judicial discretion and retaining the constitutional norm of proportionality.*

*The Supreme Court, 1992 Term—Leading Cases,* 107 Harv.L.Rev. 144, 214 (1993) (emphasis added).

S.Ct. at 2815 (Scalia, J. concurring in part and concurring in judgment) (forfeiture based on isolated drug sale would be excessive); *In re King Properties,* 635 A.2d at 131–32 ("pattern of similar incidents").

■ If the Government establishes this "substantial connection" and the defendant property is found to be "guilty," there is a presumption in favor of forfeiture, and the burden shifts to the claimant. Emphasis is placed upon this first step because the "instrumentality" analysis is consistent with a fundamental principle underlying forfeiture law, i.e., that even an owner who has been merely negligent in allowing his property to be misused by another is properly punished for that negligence. *Austin,* —— U.S. at ——, 113 S.Ct. at 2808.

The second step focuses on the nature of constitutional excessiveness. In applying a proportionality analysis to a challenge of excessiveness in a pre-*Austin criminal* in personam forfeiture case, the Eleventh Circuit quoted with approval and with emphasis from the Ninth Circuit case of *United States v. Busher,* 817 F.2d 1409 (1987), as follows: "The eighth amendment prohibits only those forfeitures that, in light of all relevant circumstances, are grossly disproportionate to the offense committed." *United States v. Monroe,* 866 F.2d 1357, 1366 (11th Cir.1989).

■ Under this second step, a claimant who cannot establish an innocent owner defense is still given an opportunity to defeat an *in rem* forfeiture, but the claimant has the burden of proving that the forfeiture of the defendant property is a "grossly disproportionate" punishment given the nature of the "offense committed", that is, the drug trafficking which caused the forfeiture. This requires a court to balance the value of the defendant property against the scope of the drug trafficking. *See 429 S. Main St.,* 843 F.Supp. at 341–42 (citations omitted) (balance crime against the value of the property); *West Side Bldg. Corp.,* 843 F.Supp. at 380–81

(balance crime against the value of the property). In reviewing the nature of the drug trafficking involved, a court should inquire into such matters as the amount of drugs involved, their value, the length of time over which drug trafficking occurred, and the effect of the distribution on individuals and the community. *Accord 18755 N. Bay Rd.,* 13 F.3d at 1498–99.

■ During the application of this test, a court should not inquire into the culpability of the claimant. Within Excessive Fines Clause analysis of a § 881 forfeiture, a claimant's culpability is irrelevant. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974). The analysis itself assumes that the court has, exclusive of the issue of constitutional excessiveness, determined that the property should be forfeited. This earlier determination necessarily includes the issue of a claimant's culpability vis-a-vis either his raising an "innocent owner" defense or his challenging the facts of the Government's case.[24] Therefore, if the excessive fines issue is reached, it has already been determined that the claimant is "culpable".

It may be argued that a finding of "grossly disproportionate" is subjective just as is a finding of "disproportionate". The answer is that what we are actually trying to find is whether the forfeiture is "excessive". Requiring proof of gross disproportion against a presumption favoring forfeiture provides an escape valve for obvious injustices and at the same time should promote consistency in the application of the law.

## IV. APPLICATION

■ In the instant case, the court has previously determined that the defendant property is "guilty" of facilitating drug trafficking. *427 & 429 Hall St.,* 842 F.Supp. at 1430 (Government established probable cause to believe Jenkins was selling cocaine out of his grocery store).[25] The normal operations

24. In order to establish that he was an "innocent owner" a claimant must prove by a preponderance of the evidence that the underlying criminal activities were committed or omitted without his knowledge and consent. 21 U.S.C. § 881(a)(7); *United States v. One Single Family Residence etc.,*

995 F.2d 1558, 1561 (11th Cir.1993); *see 427 & 429 Hall St.,* 842 F.Supp. at 1427 n. 13.

25. Jenkins argues (1) that the court should not have found the defendant property forfeitable under § 881(a)(7) because he only possessed co-

of the grocery store cloaked the sale of cocaine and thereby made detection more difficult. *Accord James Daniel Good Real Property*, — U.S. at —, 114 S.Ct. at 515 (Thomas, J. concurring in part and dissenting in part). Accordingly, there is a presumption of forfeiture and the burden shifts to Jenkins.

In response, Jenkins maintains that this case involves a small quantity of drugs and therefore the forfeiture of the defendant property would be disproportionate. Although the Government could prove at most that four grams of cocaine and six-tenth of a gram of marijuana were involved, Jenkins' argument does not present the full nature of the drug trafficking involved.

18 U.S.C. § 860 states:

Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college or university, or a playground or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is ... subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release by section 841(b) ...

As previously discussed, the court has found that the Government established "probable cause" to believe that Jenkins possessed cocaine with the intent to distribute it. *See* 18 U.S.C. § 841(a)(1). Moreover, it is undisputed that G & G is within one-tenth of a mile of the basketball courts of a junior high school. *427 & 429 Hall St.*, 842 F.Supp. at 1424.

Thus, the enhanced penalty dictated by § 860 reveals that the drug trafficking involved in the instant case is of an egregious nature. *See also* U.S.S.G. § 2D1.2 (enhancement for drug offenses near protected locations).

On the other hand, Jenkins argues that in Montgomery all businesses are in close proximity to schools and therefore he should not be penalized because of this fact. The court finds this argument to be meritless. Congress has clearly expressed its intention to enhance the punishment of those who deal with drugs near schools. The fact that Montgomery has many school facilities

caine and therefore at most was guilty, under federal law, of a misdemeanor under 21 U.S.C. § 844, which is not a violation "punishable by more than one year" and (2) that the defendant property had no connection to drug trafficking, because it was only the site of "two isolated drug transactions."

Jenkins' first argument fails because it is contrary to established forfeiture law. In order to succeed under § 881(a)(7) the government need only establish "probable cause." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1440 (11th Cir.1991) (en banc). To demonstrate "probable cause" for forfeiture purposes, the Government need only present evidence furnishing a reasonable ground for belief that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance. *$121,100.00 in U.S. Currency*, 999 F.2d at 1505 (citations and quotation marks omitted); *427 & 429 Hall St.*, 842 F.Supp. at 1426 n. 10. *See also United States v. James Daniel Good Real Property*, — U.S. —, —, 114 S.Ct. 492, 512, 126 L.Ed.2d 490 (1993) (O'Connor, J. concurring in part and dissenting in part). In fact, the Supreme Court has never explicitly held that the Constitution requires proof of culpability in support of a forfeiture. *See Austin*, — U.S. at —, 113 S.Ct. at 2814 (citations omitted) (Scalia, J. concurring in part and concurring in judgment); *id.* at —, 113 S.Ct. at 2816 (Kennedy, J. concurring in part and concurring in judgment). The court has previously held that the Government established "probable cause." *427 & 429 Hall St.*, 842 F.Supp. at 1428. *See United States v. Certain Real Property Located At 11869 Westshore Dr.*, 848 F.Supp. 107, 111 (E.D.Mich.1994) (relevant inquiry is possible sentence under federal law not actual sentence under state law).

Jenkins' second argument also fails. It ignores the fact that at the time the search warrant was executed seven "zip-loc" bags containing a total of three grams of cocaine were discovered on his person and three cigarettes, containing a total of six-tenths of a gram of marijuana were discovered in his Blazer. Clearly, the forfeiture of the store in this situation, with proof of two controlled buys in the store and possession of cocaine packaged in bags similar to those used by dealers in the store, is not the forfeiture of a building in which an "isolated drug sale happens to occur." *Austin*, — U.S. at —, 113 S.Ct. at 2815 (Scalia, J. concurring in part and concurring in judgment).

throughout the city should not work to the benefit of those who choose to violate the law.

Jenkins argues further that his grocery store was a legitimate business and that half the forfeited building was leased for use as a beauty parlor, a business in no way related to the drug trafficking.

Regardless of the fact that half the building was used for a different business, there is only one building and it may either be forfeited in whole or not at all. As to the legitimacy of the grocery business, it has previously been noted that this very fact facilitated drug trafficking by making detection more difficult.

After considering all relevant circumstances, the court finds that the forfeiture of this property valued at $60–65,000 is not grossly disproportionate to the sale of cocaine on two separate occasions and the possession of cocaine on another occasion with intent to sell it, where the cocaine totaled approximately 4 grams and the trafficking occurred in an apparently legitimate grocery store located within one-tenth of a mile of the basketball courts of a junior high school. *See 38 Whalers Cove Drive,* 954 F.2d at 29 (forfeiture of $68,000 interest in condominium not unconstitutionally disproportionate to sale of $250 worth of cocaine on the premises); *429 S. Main St.,* 843 F.Supp. at 341–42 (forfeiture of property valued at $83,700 because of three marijuana sales not unconstitutionally excessive); *9638 Chicago Heights,* 831 F.Supp. at 737 (forfeiture of property valued at $37,210 because of three sales of crack-cocaine not excessive).

### V. CONCLUSION

In carrying out its appropriate legislative function, Congress has mandated the forfeiture in civil proceedings of real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a drug felony. The defendant property in this case was so used.

The constitution prohibits this forfeiture only if it is "excessive". Since the court has found that the forfeiture is not grossly disproportionate to the criminal activity which caused the forfeiture, it is not constitutionally excessive.

For the foregoing reasons, the court finds that Jenkins' motion for a new trial or in the alternative to alter the judgment of forfeiture is due to be and is hereby DENIED.