**UNITED STATES of America**

v.

**ONE 1990 FORD RANGER TRUCK, VIN NO. 1FTCR10TALUCO8885**

No. 1:92–cv–2240–RCF.

United States District Court, N.D. Georgia, Atlanta Division.

May 24, 1995.

Albert Kemp, Jr., Asst. U.S. Atty., Atlanta, GA, for plaintiff.

**1172**

John Nix, Atlanta, GA, for defendant.

### ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on plaintiff United States of America's motion for reconsideration [# 31–1] of the court's Order of February 22, 1995 [February Order] [# 29–1], *United States of America v. One 1990 Ford Ranger Truck, VIN No. 1FTCR10TA-LUCO8885*, 876 F.Supp. 1283 (N.D.Ga.1995) [*Ford Ranger I* ], in which the court determined that the forfeiture in this case was unconstitutional and directed that judgment be entered in favor of the defendant vehicle. The court grants the government's motion for reconsideration, but concludes that the result reached in the February Order was correct.

### Background[1]

This case was tried to a jury in 1994, and the jury returned a verdict in favor of forfeiture. In the February Order, the court granted owner/claimant Mark Anthony Cort's motion for judgment as a matter of law on the ground that the forfeiture violated the Excessive Fines Clause of the Eighth Amendment. The court determined that the appropriate test for measuring excessiveness is the test advanced by the United States District Court for the Middle District of Alabama in *United States v. One Parcel Property Located at 427 & 429 Hall Street*, 853 F.Supp. 1389 (M.D.Ala.1994) [*427 & 429 Hall Street* ], which employs both an instrumentality and a proportionality inquiry. Specifically, that test is as follows:

> (1) Was there a "substantial connection" between the defendant property and the drug trafficking in question? If so, (2) Is the forfeiture of the defendant property a "grossly disproportionate" punishment, given the nature of the drug trafficking involved?

*Id.*, at 1399; *see also United States v. One Parcel of Real Estate Located at 13143 S.W. 15th Lane*, 872 F.Supp. 968, 972–75 (S.D.Fla.

1994) (adopting same test). In applying that test, the court concluded that claimant's truck was not an instrumentality of the drug offense at issue, and that forfeiture of the truck was a grossly disproportionate penalty.

The government contends that the court erred in several respects in the February Order. The court will address each of the government's arguments in turn.

### Discussion

#### 1. The Instrumentality Test

■ The government agrees that Excessive Fines Clause analysis should center upon "*whether* the confiscated property has a close enough relationship to the offense." Plaintiff's Motion for Reconsideration [Plaintiff's Motion], at 2 (citing *Austin v. United States*, — U.S. —, —, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring) (emphasis in original)). However, the government proposes that the court use an instrumentality test that differs from the one used in the February Order, and the government further argues that the court misapplied the test that was used in the February Order.

■ (a) *The government's proposed test.* In delineating the factors which are relevant to the instrumentality inquiry, this court drew upon the Fourth Circuit's opinion in *United States v. Chandler*, 36 F.3d 358 (4th Cir.1994). *See Ford Ranger I*, 876 F.Supp. at 1292. Specifically, this court considered the following factors:

> (1) whether the use of the property in the offense was deliberate and planned or merely incidental or fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.

---

**1.** The factual background of this case is set out in the February Order and need not be recounted here.

*Chandler,* 36 F.3d at 365. This court also noted the Fourth Circuit's admonition that "[n]o one factor is dispositive but ... the court must be able to conclude, under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense ..." *Id. See Ford Ranger I,* 876 F.Supp. at 1292.

While the government does not reject the *Chandler* court's analysis, the government proposes that confiscated property may properly be considered an instrumentality of the offense if any *one* of the following conditions is present:

(a) the criminal activity involving the property has been sufficiently extensive in terms of time and/or spatial use of the property; *or*

(b) the role of the property was integral or indispensable to the commission of the crime(s) in question; *or*

(c) the particular property was deliberately selected to secure a special advantage in the commission of the crime(s).

Plaintiff's Motion, at 3. The government submits that these three elements are not merely "factors" to apply in the instrumentality inquiry, as are the above-quoted factors listed by the *Chandler* court,[2] but are themselves independent, alternative excessiveness tests. The court agrees that the considerations governing the *application* of these proposed tests are relevant, but finds no

reason to make the satisfaction of any one of the tests dispositive of the instrumentality analysis.[3] To do so would effectively limit the Eighth Amendment analysis to a single line of inquiry for each test. Accordingly, the court will adhere to the *427 & 429 Hall Street* test, considering for the purpose of the instrumentality prong the factors set forth in *Chandler,* with no one factor controlling.[4]

■ (b) *How the instrumentality test should be applied in light of the jury's verdict in favor of forfeiture.* As the court noted in the February Order (and as Cort conceded), in order to return a verdict in favor of forfeiture, the jury must have concluded that claimant's truck was used either to conceal or to transport the controlled substance Cort's friend, John Russell Howze, was charged with possessing. *See Ford Ranger I,* 876 F.Supp. at 1286. In the February Order, the court found that the truck was *not* used to transport the mushrooms, or that any such transportation was minimal. *See id.,* at 1293. Based upon this conclusion and the application of the *Chandler* factors, the court held that the defendant vehicle was not an instrumentality of the drug activity at issue.

In its motion for reconsideration, the government contends that the court disregarded the jury verdict in reaching the conclusion that claimant's truck was involved minimally or not at all in transporting the mushrooms. The government submits that the jury ver-

---

**2.** As the government correctly notes, the *Chandler* court's instrumentality test consists of three parts, analyzing

(1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can be readily separated from the remainder.

36 F.3d at 365. In the February Order, however, the court considered only the first element of the *Chandler* test. This is because the second element is inappropriate in Excessive Fines Clause analysis, *see Ford Ranger I,* 876 F.Supp. at 1289–90, and the third element simply does not apply here. The five factors delineated in *Chandler* and relied upon by this court are relevant only to the first element of the *Chandler* instrumentality test.

**3.** Indeed, a number of courts that have had the opportunity to formulate tests for measuring excessiveness have listed multiple factors, none

controlling, in what amount to "totality of the circumstances" analyses. *See, e.g., Chandler, supra; United States v. Real Property Located at 6625 Zumirez Drive,* 845 F.Supp. 725, 732 (C.D.Cal.1994) (listing three factors that "should be weighed, with no one factor being dispositive"); *United States v. Certain Real Property Located at 2408 Parliament,* 859 F.Supp. 1075, 1078 (E.D.Mich.1994) (establishing three-prong inquiry, under which "a court should look to the totality of circumstances in the given case" because "[n]o single fact or determination should end the inquiry").

**4.** The court recognizes, however, that the government's proposed test has been adopted by at least one district court. *See United States v. 9844 South Titan Court,* 865 F.Supp. 709, 715 (D.Colo. 1994).

**1174**

dict settles the instrumentality question definitively. "In all but the most egregious circumstances," according to the government, "'if the subject property has been found to be 'substantially connected' with illegal drug activity, the instrumentality test has almost by definition been satisfied.'" Plaintiff's Motion, at 5 (quoting *Chandler*, 36 F.3d at 369 n. * (Wilkinson, J., concurring)). In short, the government contends that, in making its excessiveness inquiry, the court usurped the fact-finding function of the jury by independently evaluating the evidence presented at trial.

There are several problems with the government's argument. First, the jury verdict does not, by itself, establish the constitutionality of the forfeiture. The jury found only that the forfeiture was authorized under the broad terms of 21 U.S.C. § 881(a)(4) [section 881].[5] The jury was given no special interrogatories, was not asked to determine whether the forfeiture was an excessive punishment, and was not instructed to find a "substantial connection" between property and offense before approving the forfeiture. Accordingly, the jury verdict merely establishes that forfeiture was permissible under the statute. Unless section 881 is perfectly congruent with the Eighth Amendment—a position belied by *Austin, supra*, and a position the government stops short of taking—the constitutional inquiry does not end with the jury verdict. *See, e.g., United States v. One Parcel of Real Estate Located at 13143 S.W. 15th Lane*, 872 F.Supp. 968, 975 (S.D.Fla.1994) ("[A] determination of forfeitability under [section 881] does not foreclose an analysis of whether such forfeiture would be excessive under the Eighth Amendment.").

■ The second problem with the government's argument is that any factual overreaching the court might have done regarding the role of claimant's truck[6] was not

---

**5.** The jury was instructed that "all conveyances ... which are used or intended for use to transport or in any manner facilitate the transportation, sale, receipt, possession, or concealment of controlled substances, such as psilocin mushrooms, are subject to forfeiture to the United States ..." Transcript of Charge of Court, at 7. The jury was further instructed that the government had made a preliminary showing "that the defendant vehicle was used to facilitate the commission of a drug offense," *id.*, and that claimant could prevail by "proving by a preponderance of the evidence that the property was not used to transport or facilitate the transportation, sale, receipt, possession, or concealment of a narcotic substance, or that the illegal activity was committed without [claimant's] knowledge, consent, or willful blindness." Thus, the jury instructions parroted 21 U.S.C. § 881(a)(4) almost exactly.

**6.** The government raises an important question as to how the court should evaluate the evidence presented at trial in making the fact-specific inquiry necessary to decide claimant's post-trial motion. (As noted, based on the jury charges, the only "fact" the jury clearly can be said to have found is that claimant's truck was used or "intended for use, to transport, or in [some] manner to facilitate the transportation, sale, receipt, possession, or concealment" of hallucinogenic mushrooms. *See* Transcript of Charge of Court, at 7; 21 U.S.C. § 881(a)(4). As a result, the jury verdict provides little help in resolving the remaining factual issues regarding the role of the truck, because it is impossible to discern from the verdict whether the jury thought the truck was used to transport the mushrooms, to facilitate their concealment or possession, or both.) Should the court, as a rule, construe the evidence in the light most favorable to the government or in the light most favorable to the claimant? Or should the court conduct its own review of the evidence, bearing in mind the jury's conclusion that *some* connection existed between the vehicle and the offense?

The court has found little caselaw to guide its analysis in this regard. Nearly all of the reported post-*Austin* cases addressing excessiveness challenges to civil forfeitures were decided at the summary judgment stage, on the basis of undisputed facts. *United States v. Chandler, supra*, is the only procedurally similar case this court has unearthed. In *Chandler*, as in this case, the excessiveness inquiry took place against the backdrop of a jury verdict in favor of forfeiture. In applying the instrumentality test, the *Chandler* court described the testimony of the government's trial witnesses and concluded that "the overwhelming evidence presented by the government showed that [the defendant property] was both a substantial and meaningful instrumentality of the alleged drug offenses." 36 F.3d at 366. It is not clear from the *Chandler* opinion exactly how the Fourth Circuit arrived at this conclusion, though it appears that the court independently weighed the evidence. (The opinion's statement of facts indicated that the claimant (Chandler) presented evidence at trial that he had not engaged in any illegal activity on the defendant property. 36 F.3d at 361. The court apparently did not believe Chandler's witnesses, however, and concluded that "the evidence amply shows that [Chandler] was not merely aware, but actively involved, in the commission of the

material to the instrumentality inquiry. In other words, reconsidering the evidence presented at trial in the light most favorable to the government—*i.e.,* assuming the truck *was* used in some way to transport the drugs, as well as to conceal them—the court still concludes that the truck was not "substantially connected" to the crime. Thus, the instrumentality prong of the *427 & 429 Hall Street* test remains unsatisfied.

As an initial matter, the court stands by its conclusion in the February Order that the mushrooms were in the truck, if at all, for only a short period of time. The testimony at trial supporting the inference that the truck was used to transport the drugs was as follows: Officer Triplett testified that Cort told him and Officer Pike, "Okay, they had brought it [the mushrooms] from South Carolina. It was strictly for their own personal use, and they were not selling." Trial Transcript [Tr.], at 16–17. Moreover, Officer Triplett's police report stated as follows: "Mr. Cort stated he was not selling but had brought the mushrooms from South Carolina." Tr., at 107, and Government's Trial Exhibit 3. Thus, the jury could have found that the drugs were brought to Atlanta from South Carolina. Cort and Howze offered undisputed testimony that Howze traveled from South Carolina the day before the concert to visit Cort, who was in Atlanta, and that the pair drove together to the concert the next day in Cort's truck. Cort further testified that, as of March of 1992, he had not been to South Carolina in the past four months. Tr., at 88. Considering this testimony *in toto,* the only reasonable inference is that, if the drugs did come from South Carolina, they came with Howze in whatever mode of transportation Howze used to get to Atlanta.

■ There was some discussion at trial about where Cort resided. (The government apparently wanted to suggest that Cort actually lived in South Carolina, not Atlanta, and that he and Howze drove together from South Carolina to Atlanta in Cort's truck, bringing the mushrooms with them.) In the police report of the incident, Officer Triplett listed Cort's address as being in South Carolina. *See* Tr., at 18. On cross examination, however, Officer Triplett testified that he did not know whether the South Carolina address was Cort's then-current address, that such information was usually derived from a driver's license, and that, to the best of his recollection, Cort produced his driver's license upon request. *Id.,* at 22–23. Additionally, Howze, Cort, and Cort's mother all testified that Cort lived and attended school in Atlanta when the events at issue in this case occurred. *Id.,* at 59, 86, 112. On the basis of this evidence, the court finds that reasonable jurors could not have concluded that Cort resided in South Carolina during the time in question. Even if reasonable jurors could have so concluded, there was no evidence that Cort drove with Howze from South Carolina to Atlanta in Cort's truck, along with the mushrooms. Thus, Officer Triplett's testimony and police report do not support the inference that *Cort's vehicle* was used to transport the mushrooms from South Carolina to Atlanta.

However, as noted, the jury could have found that Howze brought the drugs with him from South Carolina when he came to Atlanta to visit Cort. A conclusion that the defendant truck was used to convey the mushrooms from Cort's residence in Atlanta to the Grateful Dead concert would not be inconsistent with the trial testimony, and the jury could have so found. *See Ford Ranger I,* 876 F.Supp. at 1293. For the purpose of the instant motion for reconsideration, then, the court will assume that the defendant truck *was* used to transport the drugs for this limited period of time. The court will also assume that Cort and Howze were dividing up the mushrooms and preparing to ingest or otherwise utilize them when the officers approached Cort's vehicle.

■ However, these assumptions do not change the court's conclusion that the connection between the truck and the illegal activity at issue is too attenuated to satisfy the Eighth Amendment, under the factors listed by the *Chandler* court. *See* discussion

---

illegal conduct." *Id.,* at 366.) Thus, *Chandler* arguably provides support for the proposition

that the court *is* permitted to weigh the evidence, at least to some extent.

*supra,* p. 1172. In the February Order, the court found that the use, however slight, of the truck by Cort and Howze to facilitate the drug offense was arguably deliberate, *see Ford Ranger I,* 876 F.Supp. at 1293, perhaps because they did not want to risk the probable consequences of displaying a controlled substance in plain view. However, the other *Chandler* factors weigh against forfeiture. There was no evidence that the truck was used extensively in connection with the drug activity at issue in this case, or in connection with any other drug activity. Likewise, there was no evidence that the truck was purchased for the purpose of engaging in drug-related activities.[7] Finally, there was no evidence that the truck was important to the offense at issue.

■ The government disagrees strongly on the last point, arguing that it is "telling" that Cort and Howze sought privacy in the truck, rather than another location, to engage in illicit activity. However, there is a distinction between the deliberate choice of the truck and the importance of the truck. Despite the purposeful selection of the truck by Cort and Howze as the place to divide, consume, or otherwise use the mushrooms, there was no evidence that the truck was *special* in some way that another location (such as a public restroom or the shelter of a suitable outdoor structure) would not have been. If the court accepted the government's argument, then *any* place where illegal activity occurred would be imbued with special significance simply because the illegal activity occurred there and not somewhere else. However, the court believes that more is required to demonstrate that a particular location is "important" than the fact that the drug activity's occurrence there was not random. *See United States v. Real Property Located at 6625 Zumirez Drive,* 845 F.Supp. 725, 737 (C.D.Cal.1994) ("[F]or the property to be the site of illegal activity, without more, does not render the property an integral part of the activity. The mere fact that the criminal activity occurred at the property does not make the property 'guilty' of an offense.").

The facts of some of the reported cases help illuminate when property may be considered "important" to the crime. In *United States v. 3097 S.W. 111th Avenue,* 921 F.2d 1551 (11th Cir.1991), for example, the Eleventh Circuit held that the government had shown that a "substantial connection" existed between the claimant's residence and a cocaine sale that took place in the driveway of the residence. The court's conclusion was based upon evidence that the claimant insisted "that the deal take place on familiar territory." *Id.,* at 1556. There is no similar evidence in this that Cort insisted that the illegal activity take place in or around his truck, or that the truck was specially equipped or designed to facilitate drug violations. *Compare Chandler, supra,* 36 F.3d at 366 (claimant's farm was "important" to marijuana cultivation based on evidence that farm was chosen for its seclusion; *i.e.,* "long private road leading up to property," lack of visibility from public road, security camera installed at farm gate); *U.S. v. Real Property Located at 24124 Lemay Street, West Hills, California,* 857 F.Supp. 1373 (C.D.Cal. 1994) (forfeiture of residence was not excessive where claimant admitted he had constructed a hydroponic garden in order to grow the 108 marijuana plants which were found in his garage); *United States v. Certain Real Property Located at 11869 Westshore Drive,* 848 F.Supp. 107, 111 (E.D.Mich. 1994) (forfeiture of real property was not excessive where evidence showed that house was used as marijuana "sales office" and barn was used as "warehouse" to store the drugs); *427 & 429 Hall Street, supra,* 853 F.Supp. at 1400–01 (forfeiture appropriate where "the normal operations of the grocery store cloaked the sale of cocaine and thereby made detection more difficult"). In short, there is no evidence here to indicate that Cort's truck was important to the crime. The court therefore adheres to its determination that Cort and Howze's deliberate selection of the truck as the place to manage the mushrooms is the only factor weighing in

---

7. The government accurately points out that the court overreached in stating definitively in the February Order that the truck was not purchased to facilitate drug violations. *See Ford Ranger I,* 876 F.Supp. at 1293. However, there was also no evidence that the truck *was* purchased for that purpose.

favor of finding that the truck was an instrumentality of the drug activity. On this basis, the court cannot conclude that the instrumentality test is satisfied.

### 2. *Proportionality Review*

As noted in the February Order, the court's finding that the truck was not an instrumentality of the drug activity ends the analysis under the *427 & 429 Hall Street* test: the forfeiture is unconstitutional. *See Ford Ranger I*, 876 F.Supp. at 1293. However, the court went on to conduct a proportionality review, concluding that forfeiture of claimant's truck would be a grossly disproportionate penalty because the drug activity at issue was not serious within the meaning of section 881, as indicated by the legislative history of that statute.

█ The government correctly points out that the court erroneously consulted the legislative history of the 1984 amendments to the Comprehensive Drug Abuse Prevention and Control Act of 1970 [the Act], rather than the legislative history of the original Act. Upon reconsideration, the court agrees with the government that the Act was "designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States" and, as such, is directed at small-scale drug users as well as those involved in racketeering and organized drug trafficking. H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4567. Accordingly, the court cannot conclude on the basis of the appropriate legislative history that the drug activity at issue in this case was "Mickey Mouse" within the meaning of section 881.[8]

█ The court's resort to the legislative history of the forfeiture statute must be placed in context. The focus of the proportionality test is a comparison of the harshness of the penalty with the seriousness of the offense at issue. *See Ford Ranger I*, 876

F.Supp. at 1288. In the February Order, the court attempted to discern how to evaluate "harshness" and "seriousness" for the purpose of proportionality review. *Id.*, at 1288–1291. The best guidance the court could find regarding how to measure the gravity of the offense was the Eleventh Circuit's opinion in *United States v. One Single Family Residence Located at 18755 North Bay Road,* 13 F.3d 1493 (11th Cir.1994), in which the court concluded that the forfeiture of a residence which was the site of illegal poker games was a disproportionate punishment, because the gambling laws were not intended to target small-scale operations.

█ Thus, the court's reliance in the February Order upon the legislative history of section 881 was an attempt to bring order out of the chaos that is proportionality review. The court did not believe then, and does not believe now, that proportionality analysis should be governed simply by the intent of Congress, thus transforming the test into one of statutory interpretation. To the contrary, proportionality inquiry is a constitutional question governed by the Eighth Amendment. That Congress may have intended the forfeiture laws to permit the seizure of a vehicle used for the limited purpose of facilitating the concealment, possession, or short-term transportation of a small, personal use quantity of hallucinogenic mushrooms, does not settle the matter. Congressional intent is ineffective if the enforcement of that intent would violate the Constitution.

However, in the interest of caution and judicial restraint, the court will not undertake an unnecessary proportionality analysis in the absence of more guidance about how to do so. The forfeiture in this case does not satisfy the first prong of the *427 & 429 Hall Street* test and is therefore unconstitutional.

### Conclusion

Accordingly, plaintiff United States of America's motion for reconsideration [# 31–

---

8. In fairness to the government, the government's attorney agreed that the case was "Mickey Mouse" at the prompting of the undersigned. *See* Tr., at 47–48; *Ford Ranger I*, 876 F.Supp. at 1294. In quoting that portion of the trial transcript, the court intended only to highlight the small-scale nature of the drug activity engaged in

by Cort and Howze. The court in no way meant to suggest that Officers Pike and Triplett and the other government officials involved in this case, including the government's attorney at trial, take lightly their important responsibilities to enforce state and federal drug laws.

1] of the court's Order of February 22, 1995 [# 29–1], is GRANTED. Upon reconsideration, the court VACATES the portion of the February Order which concluded that the forfeiture of claimant Mark Anthony Cort's vehicle was a grossly disproportionate penalty (February Order, pp. 23–25; *Ford Ranger I*, 876 F.Supp. at 1293–1294). However, the court REAFFIRMS that claimant's motion for judgment as a matter of law [# 27–1] is GRANTED. Judgment for the defendant property shall stand. The government may appeal this decision, if it wishes, within 30 days of the entry of this Order.