**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN REAL PROPERTY LOCATED AT 11869 WESTSHORE DRIVE, PUTNAM TOWNSHIP, LIVINGSTON COUNTY, MICHIGAN, together with all of its Fixtures, Improvements and Appurtenances, Defendant.**

Civ. A. No. 92–73383.

United States District Court,
E.D. Michigan, S.D.

April 5, 1994.

**108**

Graham Teall, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Thomas Wilhelm, Bloomfield Hills, MI, for defendant.

1. On March 21, 1994 the Court entered two orders. The first granted the government's motion for partial summary judgment and ordered that the parcel of property upon which a pole barn was located be forfeited. The second order granted the Dupries' motion to dismiss the government's forfeiture complaint against a parcel which was undeveloped and was unconnected to drug trafficking.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a civil forfeiture case. 21 U.S.C. § 881(a)(7). Plaintiff United States of America (the government) seeks the forfeiture of defendant real property, a residence, commonly known as 11869 Westshore Drive, Putnam Township, Livingston County, Michigan on the grounds that it was used to facilitate the unlawful processing and distribution of marijuana.[1] Neal Duprie and his wife Kathryn Duprie filed claims to the property. Now before the Court is the government's motion for summary judgment and Neal and Kathryn Duprie's motion to dismiss as to the residence. For the reasons which follow, the government's motion will be granted, the Dupries' motion will be denied and the residence will be forfeited.

### II.

#### A.

##### 1.

In June 1992, following two undercover drug buys, officers from the Livonia Intelligence Bureau and the Livingston and Washtenaw Narcotics Enforcement Team executed a search warrant on 11869 Westshore Drive, Putnam Township. The warrant was issued by a district judge in Livingston County and covered a search of the curtilage and premises of the property including outbuildings, as well as for the person of Neal Leo Duprie, Jr. Seized during the search from the residence were several baggies containing various amounts of marijuana; currency, including currency marked by the Narcotics Enforcement Team and used during the undercover buys; and several guns. Seized from a pole barn on the property was approximately twenty five pounds of marijuana found hidden in a boat.[2]

2. The government states that the twenty five pounds of marijuana was found in the garage. Defendants state that the twenty five pounds of marijuana was found in the pole barn. The Court assumes that the government uses the terms garage and pole barn synonymously.

During the course of the search Neal and Kathryn Duprie drove up to the residence. They were arrested for possession with intent to distribute a controlled substance. In a search of their vehicle incident to their arrest the officers noted that the car smelled of freshly burned marijuana and found three burned marijuana cigarettes and a baggie with a small amount of marijuana in the console. The Dupries were prosecuted under state law.[3] Neal Duprie plead guilty to a felony and received eight months in jail and probation. Kathryn Duprie plead guilty to a ninety day misdemeanor and was fined. The government seized the property on June 17, 1992.

## B.

In a September 14, 1993 order, the Court deemed that the Dupries admitted the following: that the property was used by Neal Duprie to traffick in multiple pounds of marijuana, that Neal Duprie sold multiple pounds of marijuana in May and June of 1992 at the property, that a search of the property produced marijuana in the study, the master bedroom, the garage, the guest room, the kitchen, the living room, and in a "fanny pack" along with Kathryn Duprie's driver's license, and that Kathryn Duprie was aware of Neal Duprie's drug trafficking activities in the residence.

## III.

■ Real property, "including any right, title, and interest ... in the whole of any lot or tract of land and any appurtenances or improvements" is subject to forfeiture if it "is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment ..." 21 U.S.C. § 881(a)(7). In order to establish that the property is forfeitable, the government must first prove that there is "probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance." *U.S. v. $67,220.00 in*

*U.S. Currency,* 957 F.2d 280, 283 (6th Cir. 1992) (quoting *United States v. 526 Liscum Drive,* 866 F.2d 213, 216 (6th Cir.1989). Probable cause means "reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.* The burden then shifts to the claimant to prove why the property is not forfeitable. *$67,220.00 in U.S. Currency,* 957 F.2d at 283.

## A.

■ At oral argument held on March 2, 1994, the Court gave the government an opportunity to provide an affidavit from an agent involved in the investigation regarding the connection of the residence to the transaction. The Dupries were given the opportunity to respond. The government has filed an affidavit of Benjamin McDermott (McDermott), a Livonia Police sergeant assigned to the DEA Task Force, and involved in the investigation of the Dupries. The Dupries have not responded to the affidavit.

### 1.

The government asserts that it has demonstrated that the property is subject to forfeiture and that the Dupries are unable to show that it is not. It says that the Dupries' admissions that they used the property to sell multiple pounds of marijuana, and their admission that quantities of marijuana were found in the residence and the garage establishes probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance. Further, McDermott's unrefuted affidavit states that a confidential informant used in the investigation called the Duprie residence twice to arrange for two separate purchases of multiple pounds of marijuana. The confidential informant was instructed by Duprie to come to the residence to complete the transaction. At that time five pounds of marijuana was delivered at a purchase price of $1,650 per pound and the balance of $3,300 owed from the earlier purchase was paid. During the

---

3. The statute(s) under which the Dupries were prosecuted and to which they plead are not set forth in the record.

subsequent execution of a search warrant in the residence, McDermott says that $4,800 in cash was found in a desk and $3,300 in recorded police funds was found. In addition, marijuana was found throughout the residence.[4] The government contends that the amounts of marijuana found in the residence was greater than that which would constitute personal use.

### 2.

The Dupries say that the residence is not forfeitable because only very small amounts of marijuana, consisting of roaches and residue, was found inside the house. The amount found, the Dupries say, is an amount consistent with simple possession for personal use.

### B.

The Court is satisfied that the government has met its burden of showing probable cause that the residence was sufficiently connected to drug transactions to render it forfeitable. While the Court notes that the precise amount of marijuana found in the residence is not included in the record, the Affidavit in Support of the Seizure Warrant notes that marijuana was found in a number of places throughout the house and consisted of more than just roaches and residue. In addition McDermott's affidavit shows that the house was used to facilitate at least two multiple pound purchases of marijuana. Since the government met its burden, the burden shifts to the Dupries to show by a preponderance of the evidence that the property was not subject to forfeiture. *United States v. 566 Hendrickson Boulevard,* 986 F.2d 990, 995 (6th Cir.1993).

■ The Dupries were deemed to have admitted that the property was used in multiple pound drug transactions and money used in the undercover purchase was found in the house. However, the Dupries say that the property is not forfeitable because Kathryn Duprie was not charged with an of-

fense punishable by more than one year in prison as required under 21 U.S.C. § 881(a)(7), that only a small amount of marijuana and money was found on the property, and that whether the parcel was substantially connected to the underlying criminal activity creates a question of fact sufficient to defeat the motion for summary judgment.

The Dupries' argument that the property is not subject of forfeiture because Kathryn Duprie plead guilty to a 90 day misdemeanor is not well taken. First, Neal Duprie plead guilty to a state felony charge.[5] Second, had the Dupries been charged federally under 21 U.S.C. § 841 with distributing or possessing with intent to distribute less than 50 kilograms of marijuana, they could have been subject to a prison term of up to five years under 21 U.S.C. § 841(b)(1)(D). Additionally, the government has presented evidence that the residence was used to facilitate at least two multiple pound transactions of marijuana, one transaction occurring within the residence itself. The Dupries have come forward with no evidence or affidavit to refute the government's evidence. Accordingly, they have failed to sustain their burden that residence was not forfeitable.

### IV.

■ The Dupries next claim that if the residence is forfeitable property, the forfeiture of it would constitute cruel and unusual punishment and cite *Austin v. United States,* 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Supreme Court in *Austin* held that civil forfeiture constitutes punishment and is subject to the limitations of the Eighth Amendment Excessive Fines Clause. *Id.* at —— – ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 505–506. However, the Supreme Court declined to establish a test for determining when a forfeiture is constitutionally excessive. Instead, it held that excessiveness is a determination for the lower courts in the first instance. Some courts have compared the value of the property against the

---

4. McDermott's affidavit does not quantify the amount of marijuana found in the residence.

5. The Court does not know to what state law felony Mr. Duprie plead guilty. However under Michigan law a person convicted of delivery or

possession with intent to deliver marijuana of an amount under fifty grams is subject to imprisonment for not less than one year. M.S.A. § 14.-15(7401)(2)(a)(iv).

nature of the offense. *United States of America v. 429 South Main Street*, 843 F.Supp. 337 (S.D.Ohio 1993); *United States v. Borromeo*, 1 F.3d 219 (4th Cir.1993) (the court must inquired into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate purposes of the forfeiture). Justice Scalia, in his concurrence in *Austin* suggests that the proper inquiry is "whether the confiscated property has a close enough relationship to the offense".

**1.**

Under a Scalia analysis, the Court is satisfied that the residence has a close enough relationship to the offense. The evidence in the record shows that the residence was used to facilitate at least two drug sales in short span of time. Additionally, the Court is satisfied that the record supports the conclusion that the house was used as the "sales office" in which sales of marijuana were arranged, whereas the pole barn was used as the "warehouse", to store the marijuana.

**2.**

Under a value analysis, the Court is also satisfied that the record supports the conclusion that the forfeiture is not excessive. The Dupries say that the residence is valued somewhere between $85,000 and $105,000. They assert that less than a few grams of marijuana was found in the residence. Under Michigan law, the maximum fine for the misdemeanor offense of possession of a few grams of marijuana is $1,000. M.C.L.A. § 333.7403. The Dupries say that even under the felony provision, the maximum fine is only $2,000. M.C.L.A. § 333.7401. The Dupries argue that the forfeiture of property with a value of at least $80,000 where the fine is at most $2,000 is clearly excessive and violates the constitution.

The government responds that the Dupries, had they been charged federally under the Controlled Substance Act, 21 U.S.C. § 841(b)(1)(D), could have faced a maximum fine of $250,000. The government relies on *United States v. Property at 38 Whalers Cove*, 954 F.2d 29 (2nd Cir.1992) in which the Court of Appeals for the Second Circuit affirmed the forfeiture of a condominium valued at $145,000 in which drugs with a value of $250.00 was sold.

**3.**

Initially the Court notes that the 1991 State Equalized Value of the house was $31,770. The government's appraisal of the house was $85,000. McDermott, in his affidavit, stated that Duprie sold the marijuana in the two undercover transactions at a price of $1650 per pound which is a wholesale price. The retail price or "street value" ranged from $125 per ounce to $175 per ounce. Thus, the retail value of the thirty two pounds of marijuana involved, twenty six pounds stored in the pole barn and six pounds involved in transactions, ranged from $64,000 to $89,000. A significant amount of marijuana with a substantial value was involved here. In addition, had the Dupries been charged federally, they could have been subject to fines of $250,000. Forfeiture of the house is the functional equivalent of, at most, a fine of $85,000. The Court is satisfied that forfeiture of the house does not constitute an excessive fine.

**IV.**

For the reasons stated above, the government's motion for summary judgment is GRANTED. The government shall present an appropriate form of judgment.

SO ORDERED.