**UNITED STATES of America**

v.

**ONE 1990 FORD RANGER TRUCK, VIN NO. 1FTCR10TALUCO8885.**

No. 1;92–cv–2240–RCF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 22, 1995.

Albert Kemp, Asst. U.S. Atty., for plaintiff.

John Nix, for claimant.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on claimant Mark Anthony Cort [Cort]'s motion that "forfeiture of defendant's vehicle would violate the Excessive Fines Clause of the

Eighth Amendment" [# 27–1]. As claimant files this motion after a jury verdict in favor of plaintiff, United States of America, the court will interpret Cort's request as one for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50(b).[1] The motion is opposed. Upon careful review, the court grants Cort's motion and enters judgment in favor of the defendant vehicle.

**Background and Evidence Presented at Trial**

On the afternoon of March 3, 1993, Atlanta Police Officers Jeffrey Pike and Calvin Triplett, Sr. arrested claimant Cort and his companion John Russell Howze [Howze] and seized Cort's 1990 Ford Ranger truck. Both Cort and Howze were charged with possession of hallucinogenic psilocin mushrooms in violation of Georgia law. Howze later pled guilty and was fined $300 in Fulton County Superior Court; the charges against Cort were *nolle prossed.*

The federal government then adopted the seizure of Cort's truck and initiated civil forfeiture proceedings in this court pursuant to 21 U.S.C. § 881(a)(4) [section 881].[2] A jury trial was held on May 11, 1994. The court determined after the government rested its case that the government had shown probable cause to believe that a substantial connection existed between the truck and the criminal activity.[3] The jury then returned a verdict in favor of forfeiture.

The undisputed facts at trial were as follows: Howze, who lived in South Carolina, traveled to Atlanta on March 2, 1992, for the purpose of attending a concert by the musical group The Grateful Dead at the Atlanta

Omni Coliseum on March 3, 1992, with Cort, his friend of 20 years. Howze had purchased the tickets to the concert for both himself and Cort about a month earlier in South Carolina. Howze stayed overnight on March 2 at Cort's house in Sandy Springs, Georgia, and the two left for the concert the following day between 12:30 and 1:00 p.m. in Cort's truck. Cort parked his truck on private property near the Omni that he had previously received permission to use. Howze and Cort then walked to the plaza adjacent to the Omni, which was crowded with people and vendors of T-shirts and other souvenirs. The pair separated at some point, during which time Cort purchased a T-shirt, and they later rejoined and returned to Cort's truck.

Some time after the men returned to the truck, two Atlanta police officers (Pike and Triplett) observed Howze standing beside the door to the driver's side of the truck. Noticing that Howze's hands were inside the passenger compartment where Cort sat, the officers grew suspicious and approached the truck. When Howze saw the officers coming, he walked around the front of the vehicle to the passenger side, dropped a small package, and kicked it under the truck. The officers ordered Cort and Howze to freeze, retrieved the package and saw that it contained what appeared to be "magic" mushrooms, and then arrested the two men. The officers subsequently searched the truck and found no further contraband, and then they had the truck impounded.

Officer Triplett testified that Cort told the officers the mushrooms had been brought to the concert from South Carolina. Trial

---

1. Cort filed a pre-trial motion on the Eighth Amendment issue, but the motion was denied without prejudice because it lacked adequate factual support. *See* Order of February 17, 1994. Cort now renews the motion.

2. "All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment ..." of controlled substances are subject to forfeiture. 21 U.S.C. § 881(a)(4).

3. In a civil forfeiture action, the government bears the initial burden of demonstrating proba-

ble cause to believe that the property was involved in the offense. *United States v. One Single Family Residence Located at 18755 North Bay Road,* 13 F.3d 1493, 1496 (11th Cir.1994) (*citing United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1426–27 (11th Cir.1983)). "Once this burden is met, the burden shifts to the claimant to establish a defense to forfeiture, either by attacking probable cause or by establishing an innocent owner defense ... by a preponderance of the evidence. Failure to meet this burden results in forfeiture." *Id.* (*citing United States v. Little Al,* 712 F.2d 133, 136 (5th Cir.1983)).

Transcript [Tr.], at 16.[4] Cort and Howze, however, both testified that Howze purchased the mushrooms in the plaza outside the Omni without Cort's knowledge or consent during the time the two were separated. Tr., at 61–63, 69–71, 73, 93, 96. Thus, whether the truck was ever used to transport the mushrooms was a matter of dispute.

Cort concedes that, based upon the charge given, the jury must have concluded that the truck was used either to conceal or to transport the mushrooms. Brief in Support of Claimant's Motion [Claimant's Brief], at 2. The forfeiture therefore did not run afoul of the broadly worded section 881(a)(4). The only question before the court is whether, as a matter of law, the forfeiture was an excessive fine prohibited by the Eighth Amendment, thus rendering the application of section 881(a)(4) unconstitutional under the facts of this case.

## Discussion

1. *Appropriate Test for Determining Whether a Civil Forfeiture Constitutes an Excessive Fine Under the Eighth Amendment*

In *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment[5] applies to *in rem* civil forfeitures. The Court reasoned that both of the theories traditionally employed to justify civil forfeiture—the legal fiction that the property is "guilty," and the idea that the owner is vicar-

iously liable for the misdeeds of those to whom he entrusts his property—"rest, at bottom, upon the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence." *Id.* at ——, 113 S.Ct. at 2808. Accordingly, the Court concluded that civil forfeiture is intended, at least in part, as punishment and therefore is subject to the constraints of the Eighth Amendment. The Supreme Court did not articulate a standard to determine when a civil forfeiture constitutes an excessive fine.[6] Instead, the Court felt that "[p]rudence dictates that we allow the lower court to consider that question in the first instance."[7] *Id.* at ——, 113 S.Ct. at 2812.

■■■■ The Eleventh Circuit has not yet established a clear standard for evaluating whether a particular civil forfeiture is excessive,[8] but the opinions of the numerous other courts that have addressed the question provide some guidance. Two basic methods of measuring excessiveness have emerged in the wake of *Austin*, and most courts have applied both methods (or permutations of them) in combination. The first method, known as the "instrumentality" or "nexus" test, analyzes the relationship between the offense triggering the forfeiture and the property to be forfeited. Under this approach, forfeiture is constitutionally permissible only if the nexus between property and crime is sufficiently substantial that the property may be said to be an instrumentali-

---

4. The testimony of the officers on this point was confusing and contradictory. As an initial matter, each testified that the other had done most of the questioning of Cort. Tr. 11, 31–32. Officer Triplett testified that Cort said the drugs had been brought in from South Carolina. Tr. 16, 32. Officer Pike, on the other hand, testified that Cort "primarily just denied everything, that [the contraband] wasn't his, everything ..." Tr. 4.

5. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

6. In *Austin*, the claimant, who had pled guilty in state court to one count of possessing cocaine with intent to distribute, contested the forfeiture of his mobile home and auto body shop. —— U.S. at ——, 113 S.Ct. at 2803. The district

court granted summary judgment to the government; the Eighth Circuit affirmed on the ground that the Eighth Amendment did not apply to civil forfeiture; and the Supreme Court remanded to the circuit court.

7. On the same day that the Supreme Court decided *Austin*, it also held that criminal, *in personam* forfeitures are subject to Excessive Fines Clause limitations. *See Alexander v. United States*, —— U.S. ——, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993). *Alexander* also declined to delineate a test for determining whether a particular forfeiture is constitutionally excessive.

8. The single Eleventh Circuit opinion addressing the issue, *United States v. One Single Family Residence Located at 18755 North Bay Road*, 13 F.3d 1493 (11th Cir.1994), will be discussed in depth *infra*.

ty of the crime. The second method, called "proportionality" analysis, examines whether the harshness of the penalty of forfeiture roughly matches the seriousness of the offense in question. The court will discuss each of these methods in more detail.

(a) *The "Instrumentality" Test.* In his *Austin* concurrence, Justice Scalia advocated the instrumentality test as the only relevant mode of analyzing whether a civil forfeiture is excessive. Justice Scalia noted that, when evaluating whether a monetary fine is constitutionally excessive under the Eighth Amendment, "the touchstone is [the] value of the fine in relation to the offense" (*i.e.*, proportionality analysis). —— U.S. at —— ——, 113 S.Ct. at 2814–15. In civil forfeiture actions, by contrast, Justice Scalia reasoned that the value of the property is irrelevant, and the excessiveness inquiry should instead focus on whether the claimant's property has been " 'tainted' by unlawful use." *Id.* at ——, 113 S.Ct. at 2815. As stated by the Fourth Circuit, which has adopted Justice Scalia's approach and no other,[9] Congress, in enacting civil forfeiture laws, "did not intend to punish or fine by a particular amount or value; instead, it intended to punish by forfeiting property of whatever value which was *tainted* by the offense." *See United States v. Chandler*, 36 F.3d 358, 364 (4th Cir.1994) (fashioning a multi-factor instrumentality test).[10]

▮ Both Justice Scalia and the Fourth Circuit used persuasive hypothetical examples to illustrate the distinction between the *value* of confiscated property and the *role* such property plays in a crime. Justice Sca-

lia noted that "[s]cales used to measure out unlawful drug sales ... are confiscable whether made of the purest gold or the basest metal." —— U.S. at ——, 113 S.Ct. at 2815. Similarly, the *Chandler* court compared a $14 million yacht "specially outfitted with high-powered motors, radar, and secret compartments for the sole purpose of transporting drugs from a foreign country to the United States" with a row house owned by a elderly grandmother in which police discovered a trace amount of cocaine in a grandson's bedroom. 36 F.3d at 364. Forfeiture of the boat, despite its extraordinary monetary value, would offend few, but forfeiture of the row house would probably be considered excessive. Thus, in an instrumentality analysis, "[t]he question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." *Austin*, —— U.S. at ——, 113 S.Ct. at 2815 (Scalia, J., concurring) (emphasis in original).[11]

(b) *The "Proportionality" Test.* The examination of whether the "punishment" of civil forfeiture is proportionate to the offense at issue is, in some respects, a logical approach to Excessive Fines Clause analysis. First, the wording of the clause suggests a proportionality inquiry: a forfeiture can only be "excessive" if it is compared to something else. Second, a proportionality test has already been developed in Eighth Amendment jurisprudence to analyze whether a criminal sentence violates the Cruel and Unusual Punishment Clause. *See Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). However, as several distinct strands

---

9. At least one state court has also accepted Justice Scalia's view. In *In re King Properties*, 535 Pa. 321, 635 A.2d 128, 133 (1993), the Supreme Court of Pennsylvania wrote that the excessiveness inquiry "does not concern the value of the thing forfeited, but the relationship of the offense to the property which is forfeited."

10. The relevant facts of *Chandler* are as follows: The government seized claimant Chandler's 33-acre farm and presented evidence at trial that Chandler, who had not been convicted of any drug offenses, was using the farm to distribute, package, sell, and purchase controlled substances. The Fourth Circuit affirmed the district court's *in rem* forfeiture judgment in favor of the government. The details of the instrumentality

test articulated by the Fourth Circuit will be discussed *infra*, p. 1292.

11. The *Austin* majority responded to Justice Scalia's concurrence in a footnote:

> Justice SCALIA suggests that the sole measure of an *in rem* forfeiture's excessiveness is the relationship between the forfeited property and the offense.... We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive.

—— U.S. at —— n. 15, 113 S.Ct. at 2812 n. 15.

of analysis march under the banner of proportionality review, the court's first task—and not an easy one—is to determine what proportionality analysis *is* (or, at least, what it *should be*).

One source of guidance for fashioning a proportionality test, as noted above, is the analysis set forth in *Solem v. Helm, supra,* in which the Supreme Court held that the Eighth Amendment requires a defendant's criminal sentence to be relatively proportionate to his or her crime. Under the three-part *Solem* test, courts should consider (1) the inherent gravity of the offense, (2) sentences imposed for similar offenses in the same jurisdiction, and (3) sentences imposed for the same crime in other jurisdictions. *Id.* at 290–94, 103 S.Ct. at 3010–11.

■ While the first factor of the *Solem* test may be relevant here, the second and third factors do not apply readily in the civil forfeiture context. In contrast to criminal sentencing schemes, where the court has significant latitude to avoid imposing inappropriately severe prison sentences, the court cannot calibrate the severity of the punishment of civil forfeitures, because the court does not select the property that is involved in drug crimes. In any event, the court is not aware of—and the parties have not offered—any information regarding civil forfeitures imposed in this or other jurisdictions; accordingly, there is no informational basis for making a meaningful comparison between the instant forfeiture and forfeitures in factually similar cases. Thus, while uniform application of civil forfeiture laws might be a laudable goal, the court finds no practical method of achieving that result.

Additionally, as several courts have noted, the Supreme Court's decision in *Solem* has been undermined by its later decision in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), which cast doubt upon the proposition that the Eighth Amendment guarantees proportionate sentences.[12] Thus, at the very least,

*Solem* cannot be imported wholesale into the land of civil forfeiture.

Most courts engaging in proportionality review have, accordingly, modified the *Solem* test. Instead of comparing civil forfeitures in different cases to achieve proportionality, they have weighed the harshness of the forfeiture penalty in a particular case against the seriousness of the offense that underlay the forfeiture. It is far from clear, however, how best to effect this comparison. Specifically, how should a court measure the harshness of the penalty and the gravity of the offense?

(i) *Measuring the harshness of the penalty.*

Many courts have assumed that the monetary value of the subject property is an accurate measure of the harshness of the forfeiture. *See, e.g., United States v. One 1988 White Jeep Cherokee,* 1994 WL 228996 *3 (D.V.I. April 25, 1994) ("The value of the defendant vehicle far exceeds the gravity of the criminal conduct."); *United States v. Certain Real Property Located at 11869 Westshore Drive,* 848 F.Supp. 107, 111 (E.D.Mich. 1994) (applying a value analysis). According to this reasoning, the more costly the property, the more burdensome the forfeiture.

■ The flaw in this analysis, however, was identified in Justice Scalia's concurring opinion in *Austin* and the Fourth Circuit's opinion in *Chandler:* the value of the subject property bears no relationship to its "guilt." *See* discussion *supra,* p. 1287. Additionally, focusing on the subject property's monetary worth may tend, inequitably, to shield more expensive property from forfeiture. *See Chandler,* 36 F.3d at 369 (Wilkinson, J., concurring) ("Too frequently proportionality analysis serves only to insulate those who have 'hit it big' in the drug trade from the forfeiture prescribed by statute."). For example, forfeiture of a yacht on which a small quantity of cocaine was discovered would be excessive under a value analysis, but forfeiture of a rowboat would not. Thus, this court agrees with Justice Scalia and the

**12.** In *Harmelin,* Justice Scalia and Chief Justice Rehnquist declared that the Eighth Amendment did not forbid disproportionate sentences and thus *Solem* was incorrect, 501 U.S. at 964, 111 S.Ct. at 2686; and Justices Kennedy, O'Connor, and Souter stated that the Eighth Amendment forbids only "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1000, 111 S.Ct. at 2705.

Fourth Circuit that the value of the property is not relevant in determining whether a civil forfeiture is constitutionally excessive.

■ Unfortunately, the reported opinions do not suggest another method of measuring the harshness of a forfeiture. However, relevant factors would seem to include the hardship suffered by a claimant due to the loss of his or her property (*e.g.*, forfeiture of a home may be more burdensome than forfeiture of simple chattel), the replaceability or subjective value of the subject property, and the claimant's financial condition.[13]

(ii) *Measuring the gravity of the offense*

■ Two questions arise when gauging the gravity of the criminal offense (or offenses) underlying the forfeiture. The first is *which* offense is to be compared to the harshness of the penalty: the offense that supplied the basis for the government's probable cause to seize the subject property, or the claimant's offense alone? This distinction is not an issue when the claimant, acting alone, committed the conduct that triggered the forfeiture. However, in many cases, including this one, the owner of the property has had less involvement in the triggering offense than non-owners.[14] This court believes that a claimant's individual culpability is not at issue in the civil forfeiture context.

The Fourth Circuit and at least one district court have reached a contrary conclusion. In *United States v. Chandler, supra,* the Fourth Circuit considered "the role and culpability of the owner" to be important in determining whether forfeiture was excessive. 36 F.3d at 365. The court conceded that the owner's culpability was "of minor relevance to the question of whether, *vel non,* a forfeiture can properly be imposed." *Id.* at

364. However, the court felt that "where the owner's involvement in the offense is only incidental, ... *e.g.,* where he is simply aware of the offense but not a perpetrator or conspirator[,] this fact will weigh on the excessiveness side of the scales." *Id.*

Similarly, in *United States v. Real Property Located at 6625 Zumirez Drive,* 845 F.Supp. 725 (C.D.Cal.1994) [*6625 Zumirez Drive*], the United States District Court for the Central District of California considered, *inter alia,* "the inherent gravity of the offense compared with the harshness of the penalty" in determining that an *in rem* forfeiture was excessive. *Id.* at 732. In the court's view, the relevant offensive conduct was that "engaged in by *the claimant himself,* rather than ... the offense or offenses that the government had probable cause to believe were committed on the property." *Id.* at 733 (emphasis added). The *6625 Zumirez Drive* court thus applied what has been called a "discounting" rule: the seriousness of the offense is downgraded if the claimant was not charged or was acquitted of the act or acts underlying the forfeiture.[15]

■ This court, however, does not believe that the culpability of the claimant is relevant to the excessiveness of the forfeiture. In his concurring opinion in *Austin,* Justice Scalia reasoned that the claimant's culpability is properly considered only in determining whether forfeiture is permissible under the statute, not the Eighth Amendment. ─── U.S. at ───, 113 S.Ct. at 2815. Section 881 requires the government to show probable cause that the subject property was used for a prohibited purpose, and it permits a claimant to prove that the property was not so used or to raise an "innocent owner" defense.

---

13. Thus, the value of the subject property is relevant only to the extent that the loss of more expensive property may work a greater hardship on a claimant than would the loss of less expensive property.

14. Presumably, in an excessive fines analysis, the owner will have had *some* involvement in the triggering offense; otherwise, he or she would have prevailed on an "innocent owner" defense.

15. *See Quinones–Ruiz v. United States,* 873 F.Supp. 359 (S.D.Cal.1995) (discussing the *6625*

*Zumirez Drive* court's discounting rule). The *Quinones–Ruiz* court rejected the discounting rule on the following basis:

[I]n many probable cause forfeitures, the government actually has strong evidence of guilt. Adoption of the discounting rule would force the government to put on that evidence in order to insulate the forfeiture from Excessive Fines Clause attack. In effect, the discounting rule would eliminate the Congressionally mandated probable cause forfeiture scheme.

*Id.,* at 363.

*See* 21 U.S.C. § 881(a)(4)(C). If these defenses fail, however, the claimant is deemed sufficiently culpable that forfeiture may proceed—so long as it is not unconstitutionally excessive. As one district court put it, "if the excessive fines issue is reached, it has already been determined that the claimant is 'culpable.'" *United States v. One Parcel Property Located at 427 & 429 Hall Street,* 853 F.Supp. 1389, 1400 (M.D.Ala.1994) *[427 & 429 Hall Street ].*[16] In short, the relevance of the culpability of the claimant serves a purpose analytically separate and distinct from the constitutional issue.

Having determined that the relevant offense for proportionality analysis is the offense that supplied probable cause for the forfeiture, the next question is how to measure the gravity of that offense. Many courts have decided that an appropriate measure of the seriousness of the offense is the amount that the person or persons who committed that offense could have been fined under applicable criminal or civil laws. *See, e.g., United States v. Certain Real Property Located at 11869 Westshore Drive,* 848 F.Supp. 107 (E.D.Mich.1994) (forfeiture of $89,000 residence at which 25 pounds of marijuana was seized was not excessive where, *inter alia,* applicable federal fine was $250,000); *United States v. Real Property Known and Numbered as 429 South Main Street,* 843 F.Supp. 337, 341–42 (S.D.Ohio 1993) (applying similar analysis).

Indeed, in this case, the government suggests that an appropriate measure of the seriousness of Howze's crime is the amount that Howze could have been fined under the federal drug laws. In federal court, Howze could have received a civil penalty of up to $10,000, pursuant to 21 U.S.C. § 844a, for possessing a "personal use amount" of a controlled substance; ergo, the government contends that the forfeiture of a $7,500 vehicle used to facilitate that possession cannot be deemed excessive.

■ Despite the superficial appeal of this argument, however, the court rejects the government's invitation to traffic in hypotheticals. The government wishes the court to use as a yardstick for measuring the seriousness of the offense at issue a federal fine that Cort or his companion *could* have received, but did not. Significantly, § 844a sets a *maximum* fine. Had the United States Attorney sought to assess a civil penalty against either Cort or Howze, any such penalty could have been significantly less than $10,000.[17] The court will not assume on the record before it that Cort or Howze would have received the full $10,000 penalty—or any penalty, for that matter—available under § 844a. In short, the court does not believe that resort to statutory maximum fines that *might* have been imposed is any aid to accuracy.[18]

---

16. Naturally, consideration of the claimant's culpability may be appealing when that culpability is not great. In *6625 Zumirez Drive,* the government sought to forfeit the expensive residence of a man whose son was convicted of dealing drugs from the home. The court noted that, "while one might hope that the forfeiture laws would induce landowners to take greater care in choosing to whom they transfer possession of their property," parents could not reasonably be expected to evict children from their homes. 845 F.Supp. at 736. Despite the emotional appeal of this argument, as noted above, it is not legally sound. Similarly, although the court is sympathetic to Cort's lesser involvement than Howze in the crime which provided probable cause for the forfeiture of the truck, Cort's threshold culpability has already been passed upon by the jury and is not at issue in the Excessive Fines Clause analysis.

17. Even if the government had sought to recover the maximum allowable $10,000 from Cort or Howze, that amount might have been reduced

during the substantial judicial review contemplated by § 844a. An individual against whom the government assesses a penalty for possession of a "personal use amount" of a controlled substance is entitled first to a hearing, and then to a civil trial by jury at which "the facts of the violation shall be proved beyond a reasonable doubt." 21 U.S.C. § 844a(g).

18. In *6625 Zumirez Drive, supra,* the United States District Court for the Central District of California also rejected consideration of a federal fine the claimant could have received. The court stated:

[E]ven if the Court could calculate a likely fine in the event of a criminal conviction, there is no reason to use that as a guide to an appropriate sanction under a civil forfeiture scheme. Congress has seen fit to punish drug related activities through two different punitive schemes: a criminal statute imposing imprisonment and fines, and a civil statute imposing forfeiture. One is not intended to mitigate the effects of the other.

■ If a court does not consider for the purpose of civil forfeiture the amount of an applicable civil or criminal fine, then how is the court to measure the gravity of the offense in question? The Eleventh Circuit provided an answer to this question in its single opinion addressing an Eighth Amendment challenge to an *in rem* forfeiture,[19] *United States v. One Single Family Residence Located at 18755 North Bay Road [North Bay Road]*, 13 F.3d 1493 (11th Cir.1994). *North Bay Road* involved the forfeiture, pursuant to 18 U.S.C. § 1955(d),[20] of a home. valued at $150,000 that had been used to host small weekly poker games. The court held that, "under the particular facts of this case," forfeiture of the residence was "a *disproportionate* penalty." *Id.* at 1498 (emphasis added). The court did not set forth a test for evaluating proportionality, but it *did* point to the legislative history of the statute criminalizing the conduct involved (18 U.S.C. § 1955), noting that Congress did not intend the law to apply to "gambling that is sporadic or of insignificant monetary proportions." *Id.* (*citing* H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 53 (1970) *reprinted in* 1970 U.S.C.C.A.N. 4007, 4009). In effect, the Eleventh Circuit determined that an appropriate method of measuring the seriousness of an offense is to look at whether the conduct at issue is the kind of conduct that Congress intended the forfeiture laws to punish. That is the question this court will ask in the instant case.

(c) *This Court's Test: A Synthesis of the Instrumentality and Proportionality Approaches.*

■ Although the Eleventh Circuit's *North Bay Road* opinion applied proportionality review, the court did not set forth a definitive test for measuring excessiveness, and it in no way ruled out instrumentality analysis.[21] In light of the foregoing discussion, this court concludes that proper consideration of an Eighth Amendment challenge to a civil forfeiture should encompass both instrumentality and proportionality analyses.

■ One district court in this circuit has set forth a very sensible, combinative test. In *427 & 429 Hall Street, supra*, the United States District Court for the Middle District of Alabama established the following test for excessiveness:

(1) Was there a "substantial connection" between the defendant property and the drug trafficking in question? If so,

(2) Is the forfeiture of the defendant property a "grossly disproportionate" punishment, given the nature of the drug trafficking involved?

853 F.Supp. at 1399.[22] The first prong of this test apparently functions as an "on/off"

845 F.Supp. at 732. *See also United States v. One Parcel of Property Located at Shelly's Riverside Heights Lot X*, 851 F.Supp. 633, 638 (M.D.Pa.1994) (rejecting comparison of applicable federal fine with value of subject property).

19. The Eleventh Circuit rejected an Eighth Amendment challenge to a criminal forfeiture in *United States v. Monroe*, 866 F.2d 1357, 1366–67 (11th Cir.1989). In *Monroe*, which was decided before the Supreme Court handed down its decision in *Alexander v. United States, supra*, the Eleventh Circuit "declin[ed] to address" the question whether the Eighth Amendment applied to criminal forfeitures "because [in that case] no eighth amendment violation would exist under any existing analysis or any standard we would create." *Id.*, at 1367.

20. 18 U.S.C. § 1955(d) permits the forfeiture of "any property" used in an illegal gambling business.

21. Indeed, one might speculate that *North Bay Road* did not include an instrumentality analysis

because the owners/claimants in that case would have fared poorly under such an approach, inasmuch as their residence was admittedly the site of regular illegal gambling activity. The court's apparent sympathy for the plight of the claimants is evident in its description of one claimant as "an 80–year old invalid, residing at the property with his 66–year–old wife" and their adult children. 13 F.3d at 1494.

22. The government in *427 & 429 Hall Street* sought the forfeiture of the claimant's grocery store on the ground that the claimant had sold cocaine to a confidential informant on the premises. The court first addressed the Excessive Fines Clause issue in an opinion granting judgment to the government after a bench trial. *See United States v. One Parcel Property Located at 427 & 429 Hall Street*, 842 F.Supp. 1421 (M.D.Ala.1994). In that opinion, the court limited its excessiveness inquiry to an analysis of the relationship between the subject property and the drug sales, adopting the instrumentality test articulated in Justice Scalia's *Austin* concurrence. However, in its second opinion, ruling on

switch: if there is not a sufficient nexus between the property and the crime, then forfeiture is an excessive fine, regardless of the harshness of the penalty or the seriousness of the offense. If there *is* a sufficient nexus, then the court continues to proportionality review, which functions as a "dimmer" switch: the harshness of the forfeiture should roughly match the seriousness of the offense. The amount of "dimming" needed to close the distance between these two concepts indicates whether the forfeiture is excessive.

The court finds the *427 & 429 Hall Street* test to be workable and to give appropriate weight to the factors relevant in an Excessive Fines Clause analysis. Accordingly, the court will apply that test in the instant case, with one important variation. The *427 & 429 Hall Street* court applied a value proportionality test; that is, it "balance[d] the value of the defendant property against the scope of the drug trafficking." 853 F.Supp. at 1400. However, as discussed *supra,* pp. 1288–89, this court feels that a value analysis is misplaced and will instead apply the proportionality analysis outlined above, focusing on the hardship (financial or otherwise) suffered by the claimant as a result of the forfeiture.

2. *Application*

(a) *Instrumentality analysis: the relationship between the subject property and the offense supplying probable cause for the forfeiture*

 Although the jury determined that Cort's truck was sufficiently involved in the crime to justify forfeiture under section 881, the court finds that the nexus between property and offense is too attenuated to satisfy the Eighth Amendment. The Fourth Circuit's *Chandler* opinion sets forth a number of factors that this court deems useful in analyzing whether the truck was an "instrumentality" of the offense:

(1) whether the use of the property in the offense was deliberate and planned or merely incidental or fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.

36 F.3d at 365. In the Fourth Circuit's view, "[n]o one factor is dispositive but ... the court must be able to conclude, under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense ..." *Id.*

The government argues that Cort and Howze made a "deliberate decision to use the truck in the illegal activity because it provided a special advantage"—namely, concealment of illegal activity. Plaintiff's Opposition to Claimant's Post Trial Motion Opposing Forfeiture [Government's Brief], at 5.[23] The government cites *United States v. Real Property and Residence at 3097 S.W. 111th Avenue,* 921 F.2d 1551 (11th Cir.1991) [*3097 S.W. 111th Avenue*] as support for the proposition that the truck was in this way linked to the crime. However, that case decided only that the nexus requirement of *section 881* was satisfied in the civil forfeiture of a home upon a showing that the claimant selected his driveway as the location of a cocaine sale because it was familiar territory. *3097 S.W. 111th Avenue* did not address the instant constitutional issue.

As noted, the statutory nexus requirement is not at issue here. Cort concedes that the jury verdict represents a conclusion that the truck was used either to conceal or transport the mushrooms. Claimant's Brief, at 2. However, the court does not believe that the truck's relationship to the offense was close

---

a post-trial motion, the court broadened its excessiveness inquiry in light of the Eleventh Circuit's tacit endorsement of proportionality analysis in *North Bay Road.*

**23.** Specifically, the government contends that Cort and Howze "deliberately selected the defen-

dant vehicle as the situs at which the illegal drugs would be divided and consumed; and that the location of the parked vehicle and the relative privacy provided by the vehicle's passenger compartment provided Messrs. Cort and Howze with special comforts and advantages." Government's Brief, at 6.

enough that the truck can be considered "tainted" or "guilty" under the factors set forth by the Fourth Circuit in *Chandler.*

Although the use of the truck to facilitate the drug possession arguably *was* deliberate, none of the other factors apply. First, the truck was not important to the crime. The evidence indicates that, while the truck may have been used to conceal the mushrooms, it was not used to transport them. The police officers testified that Cort told them the drugs had been brought in from South Carolina; however, as noted, their testimony on this point was inconsistent, and both Cort and Howze testified that Howze bought the drugs at the concert. Even if the mushrooms had been brought from South Carolina rather than purchased at the concert, their passage in Cort's truck must have been limited to the short drive from Cort's home to the Omni, because there was no testimony that Howze drove Cort's truck from South Carolina to Atlanta. Moreover, to the extent that the truck did serve to conceal the mushrooms, the trial testimony indicates that such concealment was minimal, and even incidental. Howze stored the mushrooms first in a zippered pack around his waist and later in his palm. The truck became useful only when Howze wanted to show the drugs to Cort—and, arguably, when the drugs were to be divided and consumed. However, the relative privacy of a bathroom, a tree, or a public mailbox would have sufficed as well. There was simply nothing special about the truck.

■ Second, there was no evidence that the offense was anything but an isolated event. Neither Cort nor Howze had been convicted of any prior drug offense, and there was no testimony that the truck was ever used on any other occasion to transport or conceal controlled substances. *See United States v. One 1988 White Jeep Cherokee, supra,* 1994 WL 228996 at *3 ("The presence of a partially consumed cigarette in an ashtray does not reasonably support an inference that the vehicle had been used to transport larger quantities of drugs at some prior

time."). As Justice Scalia noted in his *Austin* concurrence, a building "in which an isolated drug sale happens to occur" could not properly be regarded as an instrumentality of the offense. —— U.S. at ——, 113 S.Ct. at 2815.

■ Finally, it is clear that Cort did not purchase the truck for the purpose of facilitating his or Howze's possession of hallucinogenic mushrooms. Under the totality of the circumstances, the court finds that the truck was not an instrumentality of the crime. The Excessive Fines Clause inquiry ends here, under the test articulated in *427 & 429 Hall Street,* and the forfeiture of Cort's truck is unconstitutional. However, in the interest of completeness, and in the absence of more thorough Eleventh Circuit precedent, the court will engage in proportionality review, as well.

(b) *Proportionality analysis: the relationship between the harshness of the penalty and the seriousness of the offense.*

The court finds that the forfeiture of Cort's truck is a grossly disproportionate penalty. First, the offense giving rise to the forfeiture—a single possession of a small quantity of hallucinogenic mushrooms—simply is not "serious" within the meaning of 21 U.S.C. § 881, as an examination of the legislative history of that statute reveals. Although federal law has long permitted the forfeiture of crime-related property, the Comprehensive Crime Control Act of 1984 expanded and streamlined existing forfeiture laws in an effort to encourage federal law enforcement agencies to invoke forfeiture proceedings more frequently. *See generally* S.Rep. No. 98–225, 98th Cong., 2d Sess. 191–221 (1984), *reprinted in* 1984 U.S.C.C.A.N. pp. 3182, 3374–3404.[24] The goal of these changes was to aid in "combatting two of the most serious crime problems facing the country: racketeering and drug trafficking." *Id.* at 191. More than twenty years ago,

> the Congress recognized in its enactment of statutes specifically addressing organized crime and illegal drugs that the con-

---

24. The law created an entirely new provision for criminal forfeiture, and it augmented the civil forfeiture provisions of section 881 to encompass

real property used to facilitate a drug violation. The law made procedural changes to existing forfeiture provisions, as well.

viction of individual racketeers and drug dealers would be of only limited effectiveness if the economic power bases of criminal organizations or enterprises were left intact, and so included forfeiture authority designed to strip these offenders and organizations of their economic power.

*Id.*

 This court does not believe that the crime at issue was the sort of conduct that 21 U.S.C. § 881 was intended to reach. There was no evidence at trial that Cort and Howze were drug dealers or even regular drug users. The quantity of mushrooms in Howze's possession was small; the police officers found no further contraband in Cort's truck; and neither Cort nor Howze had previously been convicted of a drug-related crime. As the government's attorney admitted at trial, the case was "Mickey Mouse." Tr., at 47–48. The forfeiture of Cort's truck would not deprive "racketeers and drug dealers" of the tools of their trade or strip them of their economic power. *See 6625 Zumirez Drive*, 845 F.Supp. at 738 ("Unlike cases in which the forfeited property is integral to the commission of the crime, forfeiture of the Defendant Property in this case does not rid society of the instrumentality of the crime or eliminate the resources of any criminal enterprise."). If the forfeiture of Cort's truck strikes any blow at all against "racketeering and organized drug trafficking," that blow is extremely feeble.

The second part of the proportionality inquiry is an examination of the harshness of the penalty. Unfortunately, the record contains little evidence upon which to base a judgment about how burdensome the forfeiture of his truck has been for Cort. For example, the court lacks knowledge about Cort's finances. It does appear, however, that Cort was able to post bond for the truck; and vehicles usually do not have as much subjective or sentimental value as, for example, homes. Thus, forfeiture of the truck, while certainly inconvenient and expensive, probably was not an exceptionally harsh penalty. Nonetheless, the court does not believe that, under a proportionality analysis, the "Mickey Mouse" behavior at issue was seri-

ous enough within the framework of section 881 to justify forfeiture of Cort's truck.

## Conclusion

Accordingly, claimant Mark Anthony Cort's motion for judgment as a matter of law [# 27–1] is GRANTED. The Clerk is DIRECTED to ENTER JUDGMENT in favor of the defendant property.

SO ORDERED.